[L. A. No. 3783. In Bank.—December 15, 1915.]

## COULTER DRY GOODS COMPANY, Appellant, v. M. C. WENTWORTH et al., Respondents.

CORPORATION—LIABILITY OF STOCKHOLDER—CONTRACT FOR PURCHASE OF GOODS—FUTURE DELIVERY—ACCRUAL OF LIABILITY.—Under section 3 of article XII of the constitution, and section 322 of the Civil Code, making a stockholder individually liable for a proportionate part of the "debts and liabilities" of the corporation "contracted or incurred during the time he was a stockholder," the liability of stockholders to pay their proportionate parts of an indebtedness of the corporation arising out of an executory agreement of the corporation to purchase certain goods at an agreed price, which goods were subsequently delivered to and accepted by it, attached to the stockholders owning stock in the corporation at the time the contract was made, and not to those who were stockholders at the time the goods were delivered.

ID.—CREATION OF CORPORATE LIABILITY DETERMINES LIABILITY OF STOCKHOLDERS.—The "liability" of the corporation for which the stockholders are so made proportionately liable is created when a contract binding on it is made by the corporation, independent of any question as to whether that "liability" is absolute or contingent or as to when the right to enforce it may accrue; and those who are stockholders when the "liability" is created or incurred are alone liable in any actions arising from its breach.

ID.—STATUTE OF FRAUDS—ACCEPTANCE OF GOODS SOLD BY PURCHASER—VALIDATION OF CONTRACT.—The delivery to and acceptance by the purchaser of goods under a parol contract of purchase and sale which was within the statute of frauds when made, relates back to and operates upon the contract so as to validate it as of the date it was originally entered into.

ID.—PLEADING CONTRACT OF PURCHASE BY CORPORATION.—The creditor, seeking to enforce the liability of the stockholders created by such contract, cannot question its validity under the statute of frauds, where the complaint expressly pleaded and relied on the contract as the basis of its cause of action against the stockholders.

ID.—EVIDENCE—FINDINGS—DELIVERY UNDER CONTRACT.—Such creditor cannot question the sufficiency of the evidence to sustain a finding that all the goods delivered to the corporation were delivered under such contract, when it averred that fact in the complaint.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order refusing a new trial. J. D. Murphy, Judge presiding.

J. R. Scott, and Ward Chapman, for Appellant.

Richard C. Harrison, and B. F. Stone, Jr., *Amici Curiae,* for Appellant.

O'Melveny, Stevens & Millikin, Walter K. Tuller, and W. S. Wright, for Respondents.

SLOSS, J.—A rehearing of the appeals in this cause was ordered after a decision by the court in Bank. The opinion heretofore filed was prepared by Mr. Justice Lorigan, and read, in part, as follows:

"Plaintiff brought this action against the defendants as stockholders in the Wentworth Hotel Company, an Arizona corporation, which had a place of business and transacted business in this state, to recover from each of them a certain proportion of an indebtedness incurred by the said corporation in favor of the plaintiff.

"It appears from the evidence that in June, 1906, a contract was made between the plaintiff and the Wentworth Hotel Company whereby plaintiff agreed to sell and deliver certain goods, wares, and merchandise specifically described, at prices—net cash—then determined and fixed on, the hotel company agreeing to accept said goods and pay the specified prices therefor on delivery. The goods embraced in the contract were hotel furnishings, and the prices to be paid therefor agreed on by the plaintiff and the hotel company when the contract was made aggregating some thirteen thousand dollars. At the time this contract was made the respondents were not stockholders in the corporation. The goods specified in the contract were pursuant to it delivered to the hotel company in the latter part of 1906 and the early part of 1907, and accepted by it but never paid for. Shortly prior to the time when all of such deliveries were made the respondents had become, and were at that time, stockholders in the hotel corporation.

"The principal question under this evidence in the trial court was, and is here, whether the liability of stockholders provided for by our state constitution—article XII, section 3—and by the Civil Code—section 322—attached to the stockholders owning stock in the hotel corporation at the time when the contract was made in June, 1906, or whether it

applied solely to those who were stockholders at the time the goods were later delivered to the hotel company.

"The trial court concluded that the liability of said stockholders for the indebtedness of the hotel company arising on the delivery of the goods attached at the time of the making of the contract of June, 1906, and not at the dates of delivery of the goods, and that as the defendants and respondents here were not stockholders when that contract was made, they were not liable and gave judgment accordingly in their favor.

"Plaintiff appeals from the judgment and from an order denying its motion for a new trial.

"The sections of the constitution and of the Civil Code referred to provide that each stockholder of a corporation shall be individually liable for such proportion of all of its 'debts and liabilities contracted or incurred during the time he was a stockholder' as the amount of stock owned by him bears to the whole subscribed capital stock of the corporation. It will be observed that under these provisions a stockholder is made liable for not only the 'debts,' but 'all liabilities,' contracted at the time he is a stockholder, and keeping in mind the distinction between a 'debt' and a 'liability' as the section makes it, less difficulty in solving the question under consideration is presented. This court in *Hunt* v. *Ward*, 99 Cal. 612, [37 Am. St. Rep. 87, 34 Pac. 335], referring to section 359 of the Code of Civil Procedure, which fixes the time within which actions of this kind must be brought after the liability was created, and expressing the opinion of the meaning of the word 'liability' as used in that section, said: 'Of course, there is a clear and wide distinction between the creation of a liability and the accruing of a cause of action thereon; and section 359, *ex industria,* emphasizes that distinction. A liability may be absolute or contingent; it may be unconditional or limited; it may be presently enforceable by action, or there may be time given for its performance; but, whatever its character, it is created by the consummation of the contract, act, or omission by which the liability is incurred.'

"In Rapalje's Law Dictionary, in speaking of 'liability' in contradistinction to 'debt,' it is said that 'liability is the condition of being actually or potentially subject to an obligation; is used either generally as including every kind of

obligation or in a more special sense to denote inchoate, uncertain or imperfect obligations as opposed to debts, the essence of which is that they are ascertained and certain.' Within these definitions it is quite apparent that the word 'liability' was used in our constitution and section of the code in a much more comprehensive sense than the word 'debt.' While, in a comprehensive sense, 'liability' would include a debt, it is quite clear that this is not the sense in which it was used in the provision of the constitution and section of the code. The 'liability' referred to there was not such as would arise from the existence of obligations of a corporation which were then due and payable or presently enforceable—'debts contracted'—but to such legal obligations or 'liabilities' as might be 'incurred' by the corporation, although such liabilities might not be capable of enforcement except upon some contingency or in the future. Such liability may of course exist without right of immediate enforcement against the corporation. Within this view of what constitutes 'liability' as distinguishable from the creation of a 'debt,' it is apparent that under the provisions of the constitution and section a 'liability' is created when a contract binding on it is made by a corporation and independent of any question as to whether that 'liability' is absolute or contingent or as to when the right to enforce it may accrue; and therefore that those who are stockholders when the 'liability' is created or incurred are alone liable in any actions arising from its breach. Testing by this rule the contract entered into between the corporation and the plaintiff made in June, 1906, whereby the corporation bound itself to receive and pay for the goods which the latter contracted to deliver to it, there can be no question but that the making of this contract created a 'liability' on the part of the corporation to perform its part of it. It is true that no debt would exist against the corporation until the goods were delivered. But the responsibility of stockholders is by the provisions of our law made broader than a responsibility for debts. It embraces all 'liabilities' as well. When the plaintiff, pursuant to the terms of the contract, delivered and the corporation accepted the goods, an indebtedness arose in favor of the plaintiff enforceable in an action. But this was simply the accrual to plaintiff of a right to enforce payment on compliance by it with the terms of the contract previously

entered into between the parties under which the corporation then obligated itself and incurred the liability to do so. The making of the contract would necessarily have to be relied on and proven in any action proceeding from an alleged breach of it. The right of action for a failure to perform according to its terms would result from the obligation or liability to perform which was created and incurred at the time when the contract was entered into. In the instant case the breach of the contract arose from a failure of the corporation to pay for the goods when delivered, and this gave a cause of action to the plaintiff under the contract for the debt. But under the provisions of the constitution and code the responsibility of the stockholder is not solely for the debts of the corporation, but also for its liabilities created while they are such. Here a debt was to arise subsequent to the making of the contract. But the liability of the corporation to pay it when it should arise was created when the contract was made under which it was incurred. Within the definition of *Hunt* v. *Ward*, 99 Cal. 612, [37 Am. St. Rep. 87, 34 Pac. 335], the liability was created by the consummation of the contract by which it was incurred. As bearing on this question, the citation of a couple of authorities may be made. In the state of Kentucky a statute similar to our code provided that stockholders of a corporation should be responsible 'for all contracts and liabilities' of such corporation to the extent of their stock, and that no transfer of stock should operate as a release of any such liability existing at the time of the transfer, providing suit was brought to enforce such liability within two years from the date of transfer. In *Hyatt* v. *Anderson's Trustees*, 25 Ky. Law Rep. 132, [74 S. W. 1094], a corporation made a contract leasing a store for five years at a certain monthly rental. The corporation failed. Hyatt was a stockholder when the lease was made, but subsequently sold his stock. The action was to charge him with a proportionate share of the rental accruing under the lease a year or so after he had parted with his stock. The question was whether this claim for rent was a 'liability' existing at the time Hyatt transferred his stock. It was held that it was, and that Hyatt being a stockholder at the time the contract of lease was made was responsible. The court said: 'The corporation became liable by that contract for the monthly payment of rent from the making of the contract

until its expiration, five years later. This liability existed at the time appellant sold his stock. It is true the installments had not matured for the time that is now in controversy. Still, the liability existed. . . . The word "liability" is a very broad one, and the words "liability existing at the time of such transfer" refer to the previous part of the section, and mean the same thing as the words "all contracts and liabilities of such corporation" used just above. In *Benge's Admr.* v. *Bowling*, 106 Ky. 575, [51 S. W. 151], it was held, under section 1702, Ky. St. 1899, providing that the homestead exemption shall not apply if the debt or liability existed prior to the purchase of the land, that where the defendant conveyed land, with warranty, and afterward purchased other land, which he occupied as a home, he was entitled to no exemption in the latter tract as against a judgment against him on his warranty, although the eviction was had after he purchased the homestead. So, under the Iowa statute, providing that transfers of shares of corporations should not exempt the stockholders from any corporate liability created prior thereto, it was held, in *White* v. *Green*, 105 Iowa, 181, [74 N. W. 929], that the word "liability" was much more comprehensive than the term "debt." The court said: "The liabilities contemplated by the statute are not merely obligations which are due and payable when the transfer is made. Liability, in a legal sense, is the state or condition of one who is under obligation to do at once or at some future time something which may be enforced by action. It may exist without the right of immediate enforcement." (See, also, *Fisse* v. *Einstein*, 5 Mo. App. 78; *Home Ins. Co.* v. *Peoria etc. R. Co.*, 178 Ill. 64, [52 N. E. 862]; *Pittsburgh etc. R. Co.* v. *Clarke*, 29 Pa. St. 146; *Cochran* v. *United States*, 157 U. S. 296, [39 L. Ed. 704, 15 Sup. Ct. Rep. 628].) This seems to us a sound rule, and to be the necessary meaning of the statute, fairly interpreted, with a view to promote its object.'

"Under a section of the Revised Statutes of Ohio, stockholders were made liable to creditors of a corporation to 'secure the debts and liabilities of the corporation.' The corporation had entered into a contract to purchase milk for one year, to be delivered daily, agreeing to pay a certain amount per gallon, payments to be made monthly. Before the delivery of all the milk certain stockholders who were such when the

contract was made sold their stock. Thereafter an action was brought against them to enforce a 'liability' for the price of milk delivered to the corporation after they had parted with their stock. The question was there, as here, whether those who were stockholders when the contract was made were liable for the delivery of the milk thereunder after having transferred their stock. Among other defenses against liability it was insisted, as it is here, that liability accrued only at the time of the delivery of the milk and not at the time of the execution of the contract. The court held to the contrary and that the stockholders were liable. The court summarily disposed of this particular defense, saying: 'Next it is urged by defendants in error that the debts for milk delivered under the contracts, accrued, not at the date of the execution of contracts, but at the time of the delivery of the milk. . . . When the corporation executed these milk contracts, it thereby incurred a liability to pay for all the milk which should be shipped under said contracts. . . . The liability on these contracts for the debts arising from the delivery of milk thereunder, therefore accrued at the time of the signing of the contracts. (*Herrick* v. *Wardwell,* 58 Ohio St. 294, [50 N. E. 903].)' . . .

"It is further insisted by appellant that this contract of June 6, 1906, for the sale and purchase of the goods being at a price exceeding two hundred dollars and in parol (as it was) was invalid as within the statute of frauds. (Code Civ. Proc., subd. 4, sec. 1973.) But this claim, were it otherwise meritorious, is not available to the appellant, because in its complaint it alleged that all the goods furnished to the hotel company by plaintiff were delivered to said company in the latter part of 1906 and the early part of 1907, 'in pursuance of a contract theretofore entered into between the plaintiff and the said Wentworth Hotel Company, by which it agreed to sell to said Wentworth Hotel Company and said company agreed to purchase from plaintiff said goods'; followed by a detailed list of the goods purchased and delivered with the prices and dates of deliveries. The contract of June 6, 1906, was the only contract ever made between plaintiff and the hotel company for the sale and purchase of the goods, and the trial court so found. Hence, as the appellant expressly pleaded and relied on that contract it is in no position to now question its validity. Aside from this, however,

there is no merit in this claim of the invalidity of the contract upon the ground asserted, because a contract for the purchase and sale of goods which may be within the statute when made is taken out of the statute where the buyer accepts or receives part of the goods, and here all the goods specified in the contract were delivered and accepted. This delivery and acceptance had the effect of confirming and validating the oral contract of June 6, 1906, according to its terms, and related back to and operated upon the contract so as to validate it as of the date it was originally entered into. (*Riley* v. *H. O. Bancroft's Estate,* 51 Neb. 868, [71 N. W. 745].)

"It is finally insisted by appellant that the finding of the trial court that all the goods delivered to the hotel company by plaintiff were delivered to it pursuant to the contract of June, 1906, is not sustained by the evidence. It is claimed that the evidence shows that goods of the value of $879 were not included in that contract, but were added and delivered about the time the other goods ordered under the contract were delivered and while respondents are conceded to have been stockholders. There is, however, no evidence of when any of these goods in question were ordered. It appears only that they were delivered at about the time appellant claims they were. Nor is it clear that the claim of appellant is sustained by the evidence, even if it was in a position to make it, which we think it is not. We think it is concluded by its pleading and the finding of the court made in harmony with its allegations from doing so, because it alleged in its complaint in effect, as is pointed out heretofore in dealing with a point of appellant with reference to the statute of frauds, that all the goods delivered to the hotel company by it were delivered under the contract of June, 1906; it further expressly enumerated the particular goods here in question as being a portion thereof, and agreeable to its pleading the court found this to be a fact.

"The judgment and order appealed from are affirmed."

In the quotation just made, we have omitted a portion of the former opinion, dealing with the decision in *Johnson* v. *Bank of Lake,* 125 Cal. 6, [73 Am. St. Rep. 17, 57 Pac. 664], and undertaking to distinguish that case from the one before us. The rehearing was ordered for the reason, primarily, that we entertained a doubt regarding the validity of the attempted discrimination. This doubt has not been removed

by our further examination of the earlier decision. The facts, so far at least as they appear on the face of the opinion, present a situation not substantially different from that which confronts us here. At any rate, the opinion itself treats the question involved from this point of view. In the Johnson case there was a contract of employment under which services were to be and were rendered. Here there was a contract of purchase and sale under which goods were to be, and were, delivered. In the Johnson case the services were to be paid for when rendered. Here payment for the goods was to be made upon delivery. If the liability of the corporation in the Johnson case did not arise until the services were rendered (and such was the holding), it did not arise in the present case until the goods were delivered.

But, notwithstanding the decision in *Johnson* v. *Bank of Lake,* we are satisfied, upon further reflection, that the views expressed in the former opinion filed herein are in accord with a sound construction of the provisions of our constitution and statute declaring the individual liability of stockholders, and that they also have the support of the adjudicated cases on the subject, with the exception of *Johnson* v. *Bank of Lake.* Under the constitution and section 322 of the Civil Code, each stockholder is individually liable for a given proportion of the "debts and liabilities" of the corporation "contracted or incurred during the time he was a stockholder." As is pointed out in the opinion of Mr. Justice Lorigan, "liabilities" is a term of much broader import than "debts." Under elementary rules of construction, the courts would not be justified in denying effect to the word "liabilities" by interpreting the provision of the constitution and statute as if they referred to "debts" alone. Herein is the vital distinction between the case at bar and some of the decisions from other jurisdictions to which reference is made in the briefs. In *Garrison* v. *Howe,* 17 N. Y. 458, the court was dealing with a statute making officers of a corporation liable for all the "debts of the company" in the event of their failure to file a certain report. Likewise, in *Bordman* v. *Osborn,* 23 Pick. (Mass.) 295, the statute involved made the stockholders liable for the "debts" contracted during their holding of stock. A similar statute was under consideration in *Wing* v. *Slater,* 19 R. I. 597, [33 L. R. A. 566, 35 Atl. 302].

On the other hand, such cases as *Herrick* v. *Wardwell,* 58 Ohio St. 294, [50 N. E. 903], and *Hyatt* v. *Anderson's Trustees,* 25 Ky. Law Rep. 132, [74 S. W. 1094], (both referred to in the former opinion in this case), are directly in point, since the statutes construed in these cases, like our own constitutional and statutory provisions, make stockholders liable for "debts and liabilities" of the corporation. This distinction was, perhaps, overlooked by the learned author of the opinion in the case of *Johnson* v. *Bank of Lake,* where *Garrison* v. *Howe,* 17 N. Y. 458, is cited as supporting the view declared by the court. In the opinion in the Johnson case, reference is also made to *McBean* v. *Fresno,* 112 Cal. 159, [53 Am. St. Rep. 191, 31 L. R. A. 794, 44 Pac. 358], where the court had held that a contract, whereby a city agreed to pay a given sum annually in consideration of the disposal of sewage for five years, did not violate the constitutional provision prohibiting a city from "incurring indebtedness or liability in any manner or for any purpose exceeding in any year the income and revenue provided for it for such year." The conclusion reached in the McBean case was that "the sole debt or liability created is that which arises from year to year in separate amounts as the work is performed." *State* v. *McCauley,* 15 Cal. 429, a decision of like effect, was also cited in the Johnson case.

We have no disposition to question the soundness of the rule declared in *McBean* v. *Fresno,* and similar cases. We think, however, that there is no true analogy between the situation considered in those cases, and that presented in *Johnson* v. *Bank of Lake,* and the case at bar. In *McBean* v. *Fresno,* the court was construing a provision designed to prevent public officers from imposing upon the public treasury obligations in excess of revenues provided. In ascertaining the scope of the restriction, the court (see 112 Cal. 164) regarded the object of the constitutional provision, and gave to it a construction which would carry out that object without unduly hampering the municipality in the exercise of its functions. It does not follow, however, that the word "liability" is to be given the same meaning in a provision dealing with an entirely different subject matter. In construing the provisions which define the individual liability of stockholders, we are to consider the purpose of those provisions, just as the court gave heed to the purpose of the provision

construed in the McBean case. Anyone who enters into business relations with a corporation organized in this state may well be presumed to contract with a view to the individual liability of stockholders. If he relies, as he has a right to do, upon the solvency and the credit of the stockholders of the corporation, he must necessarily look to those who are stockholders at the time he makes the contract, and not to those who may become stockholders thereafter. When the Wentworth Hotel Company made its contract with the plaintiff to purchase and pay for certain goods, it undoubtedly assumed a liability to the plaintiff. Under the law of this state, it was the agent of its stockholders to make such contract and incur a liability thereunder. (*Kennedy* v. *California Sav. Bank,* 97 Cal. 93, [33 Am. St. Rep. 163, 31 Pac. 846].) The corporation incurred a liability for any breach of the contract which it might commit, and its stockholders were equally liable for such breach. The present action to recover the amount agreed to be paid for the goods is an action on the contract just as much as would have been an action to recover damages for the refusal to accept the goods. The stockholders who were such when the contract was made are, therefore, bound under the constitution, which holds them for the ''liability'' incurred by the corporation during the time that they were stockholders.

These conclusions are in no wise inconsistent with the decision of this court in *Yule* v. *Bishop,* 133 Cal. 574, [62 Pac. 68, 65 Pac. 1094]. It was there held that an accommodation indorser of a corporation note, who had been compelled to meet the note on default of the corporation, was entitled to recover from those who were stockholders, not when the note was given, but when the obligation of the indorsement was met. The decision was based upon the ground that the liability sued upon was not that which the corporation incurred when it signed the note—this liability having been extinguished by payment—but that it was upon a new liability arising at the time of the payment of the note by the indorser. Here, however, as we have already pointed out, the liability sued upon is one arising under the original contract made by the Wentworth Hotel Company with the plaintiff.

In all other respects we are entirely satisfied with the opinion heretofore filed.

The judgment and the order denying a new trial are affirmed.

Shaw, J., Lawlor, J., and Angellotti, C. J., concurred.

LORIGAN, J., Concurring.—I am still of the opinion that the case of *Johnson* v. *Bank of Lake*, 125 Cal. 6, [73 Am. St. Rep. 17, 57 Pac. 664], is to be distinguished from the case at bar, for the reasons set forth in the opinion written by me referred to in the present prevailing opinion, but as the majority of the court are of a different view, believing that there is no substantial difference between the Johnson case and this case, and concluding that the Johnson case should be overruled, the matter of discrimination ceases to be of any practical importance, and I deem it unnecessary to burden my concurrence herein with a reiteration of my views or quotations from my opinion on that subject.

I concur in the affirmance of the judgment and order.

HENSHAW, J., Dissenting.—I dissent. Nothing that has been said shakes my conviction that "liability" is used as importing a fixed contractual obligation in the nature of a debt (*noscitur a sociis*), and not an indefinite, inchoate right which may never ripen into a legal demand. This was the decision of *Johnson* v. *Bank of Lake,* decided in 1899, after review by this court in bank. For sixteen years this has been the construction of our constitution and our statute upon the subject. Contracts, rights of stockholders, and rights of those dealing with corporations have arisen and attached under this construction. All succeeding legislatures have acquiesced in it. Why it should be subverted and the question thrown into confusion at this late date, or what purposes are served thereby, except to enable stockholders to escape liability, I am unable to perceive. It is said that one contracting with a corporation is entitled to know upon what stockholders liability is cast, and that this is accomplished by giving the word this infinitely broad meaning and holding that the liability is created at the time the contract is entered into, regardless of the time of performance. In fact, we know this amounts to little or nothing. But, let us see further: An attorney engages to conduct litigation upon behalf of a corporation; a contractor agrees to pump out a mine; each to re-

ceive a compensation contingent upon success. The litigation is brought to a successful end after more than three years of strife in the courts; the contractor succeeds in pumping out the mine after many disappointments and delays, and both the lawyer and the contractor find themselves denied any recourse against the stockholders. The stockholders' liability has ceased. It was created at the time of the contract, but it could not be enforced during the period of the execution of the contract; the stockholders at the time the contract was entered into have escaped liability, and the more recent stockholders have incurred none. Certainty in the law is at times of more importance than a correct declaration of the law, and particularly is this so in commercial matters, because commercial activities adjust themselves in accordance with any declaration of the law. They ask for positive law rather than good law. To all these interests stability and fixity is of the utmost importance, and for sixteen years they have been told by this court that the law was as declared in *Johnson* v. *Bank of Lake.*

Singularly enough, too, the prevailing opinion does not discredit the opinion of this court in *McBean* v. *Fresno,* 112 Cal. 159, [53 Am. St. Rep. 191, 31 L. R. A. 794, 44 Pac. 358]. It must be that *McBean* v. *Fresno* has been so repeatedly approved and followed as to render it immune from the attack so successfully made upon the case of *Johnson* v. *Bank of Lake.* Yet the language of the provision of the constitution interpreted and expounded in the McBean case was much broader than the provisions here under review. In the McBean case, article XI, section 18, of the constitution forbade cities from incurring "indebtedness or liability *in any manner or for any purpose* exceeding in any year the income and revenue." Yet under this extremely broad language it was declared that a liability which could not become a debt within a given year was not a liability contemplated by the constitution. Nor is the reasoning of the prevailing opinion which supports the construction declared in the McBean case persuasive, for it could justly be said that it is quite as important and was quite as much in contemplation of the constitution that one city council should not be able to mortgage the revenues of succeeding councils, and so check the development of a city, as to say that the sole design of the law was to prevent a particular council from incurring

debts in excess of the revenue of the year.   Again, *Yule* v. *Bishop*, 133 Cal. 574, [62 Pac. 68, 65 Pac. 1094], declares upon the existence of a liability as arising at the time it becomes fixed, precisely as does *Johnson* v. *Bank of Lake*.   Yet *Yule* v. *Bishop* is affirmed in the prevailing opinion.   Logically, however, if the definition of liability given in the prevailing opinion is to obtain, the liability of the stockholders of the corporation arose when the corporation accepted the indorsement of the surety.   The liability in the present case did not become fixed until the goods were delivered.   In *Yule* v. *Bishop* it did not become fixed until the surety was obliged to and did pay.   This court in bank held in the Yule case that, within the contemplation of the law, liability arose not when the contract was entered into, but when the surety in fact did pay.

The resultant benefit to stockholders of corporations, enabling them to escape liability, may justify this reversal of the law, but if it finds no justification in this there can be no other.

Melvin, J., concurred.

Rehearing denied.