[Civ. No. 281. Fifth Dist. Aug. 16, 1963.]

GMS PROPERTIES, INC., Petitioner, v. THE SUPERIOR COURT OF FRESNO COUNTY, Respondent; DORA R. BARAY, Real Party in Interest.

Stammer, McKnight & Barnum and Dean A. Bailey for Petitioner.

No appearance for Respondent.

Stutsmen, Nagel & Ferrari and William M. Young for Real Party in Interest.

CONLEY, P. J.—Pursuant to the provisions of section 416.3 of the Code of Civil Procedure, GMS Properties, Inc., a foreign corporation, applied to this court for a writ of mandate to require the Superior Court of Fresno County to enter an order quashing the service of summons upon petitioner in the case pending in that court entitled, *"Dora R. Baray,* Plaintiff, v. *Globe Hoist Company, a corporation,* et al., Defendants,'' No. 112658. That is an action for the alleged wrongful death of Ray R. Baray, husband of the plaintiff, originally filed in the Superior Court of Fresno County on August 17, 1961. On September 27, 1961, a first amended complaint was filed therein and an alias summons issued on November 3, 1961, followed by attempted legal service upon the petitioner in Iowa through the Secretary of State of California. The petitioner alleges that this service was made ''by mailing a copy of said first amended complaint and summons to the Secretary of State of the State of California.''

On or about November 15, 1961, the Secretary of State forwarded copies of the summons and the amended pleading to petitioner at its place of business in Des Moines, Iowa. On the 15th of February 1962, GMS Properties, Inc., filed a notice of motion to quash the service, supported by the affidavit of Clifford L. Nolte to the effect that he is Secretary and Treasurer of GMS Properties, Inc., the successor to the Globe Hoist Company, an Iowa corporation, by reason of a change in the corporate name; that ''Neither GMS Properties, Inc., nor Globe Hoist Company, an Iowa corporation, has done business in the State of California after June 30, 1959. On January 13, 1961, GMS Properties, Inc., relinquished all rights to do business in the State of California, and since has neither qualified nor done business in the State of California.'' The notice of motion stated that it was made upon the ground ''...that said Court lacks jurisdiction over said defendant.'' The motion to quash was resisted but granted.

A copy of a ''Certificate of Surrender of Right to Transact Intrastate Business,'' certified by the Secretary of State was filed as part of the evidentiary showing in support of the motion. It recites that on behalf of GMS Properties, Inc. (formerly Globe Hoist Company), the president and secretary of the corporation certify and declare:

''1. Said corporation hereby surrenders its right and authority to transact intra-state business in the State of California, and:

''. . . . . . . . . . . . . .

"[X] (c) That said corporation qualified for the transaction of intrastate business in California prior to September 18, 1959, and no Certificate of Qualification was issued to said corporation.

". . . . . . . . . . . .

"2. Said Corporation hereby revokes its designation of agent for the service of process in California.

"3. Said corporation consents that process against it in any action upon any liability or obligation incurred within the State of California prior to the filing of this Certificate of Surrender of Right to Transact Intrastate Business may be served upon the Secretary of State of the State of California.

"4. The post office address to which the Secretary of State may mail copies of any process against the corporation that is served upon him is East First and Court Avenue, Des Moines 6, Iowa [.]

"IN WITNESS WHEREOF the undersigned have subscribed their names this 10 day of January, 1961.

| | |
|---|---|
| [S] R. C. Morgan | Pres. |
| (President or Vice President) | (Title) |
| [S] C. L. Nolte | Sec. |
| (Secretary, Assistant Secretary or Treasurer)'' | (Title) |

The order quashing service merely states that the motion is granted and that service of summons is quashed; the specific reason for granting the motion is not set out as a finding of fact, a recital or otherwise.

Pursuant to leave of court, plaintiff filed a second amended complaint in the case on December 6, 1962, and summons was issued on the same date. Thereafter, service was purportedly made on the petitioner by delivery of copies of said second amended complaint and said summons to the office of the Secretary of State of California on January 7, 1963, and the mailing of said documents by the Secretary of State to petitioner at the above-specified address in Iowa. (Corp. Code, § 6504.) A notice of motion to quash service of the last summons was served and filed; the ground is stated to be, ". . . that said court lacks jurisdiction over said defendant." After a hearing, the court denied the motion. The declaration of Dean A. Bailey, one of the attorneys for the petitioner, in support of the motion states:

"On February 15, 1962, said defendant filed its notice of motion to quash service of summons in said action. Thereafter on March 22, 1962, said motion came on for hearing in

the above entitled court and the court having duly heard and considered the matter ordered that the motion of defendant GMS Properties, Inc., a corporation, to quash service of summons upon said defendant be and it was thereby granted, and service of said summons upon said defendant was thereby quashed. No proceedings to set aside or reconsider said order were ever taken, no application was made for a writ of mandate or other writ or process to compel said court to assume jurisdiction in said action, and no appeal from said order was ever taken; and said order is final and constitutes a final and conclusive adjudication that the above-entitled court is without jurisdiction over the defendant GMS Properties, Inc., with respect to the above entitled action."

Petitioner assumes that the same rule would apply in the present situation as could be invoked if a dismissal had followed the first ruling, a judgment had been entered, and the identical question, unaffected by new factors, had been raised; counsel argues that the result of the ruling was res judicata of lack of jurisdiction over the person of the petitioner. Respondent argues in opposition that the quashing of service of the first summons did not result in the question of jurisdiction becoming res judicata for the reason that no judgment of dismissal followed the ruling and that through additional allegations in the second amended complaint the situation was changed so that there then was an adequate pleading authorizing service through the Secretary of State to give the California court personal jurisdiction of petitioner; in other words, that the original ruling was only one procedural step in the case and that there is nothing in the law which forbids a second and successful attempt to serve a party in a pending law suit, after the elimination of the factor which justified the original ruling.

■ We agree generally with respondent on this point.

In 72 Corpus Juris Secundum, Process, section 112e, page 1167, it is said: "An order vacating service of summons and dismissing an action puts an end to litigation without a judicial investigation of the merits; and the effect of granting a motion to quash service is to declare the service void and not to dismiss the complaint. On the writ being quashed, the case stands as if no writ had been issued."

It seems to us that the situation in a pending case after a motion to quash the service of summons has been granted is parallel to the status of an action after a general demurrer to a complaint has been sustained with leave to amend. In

each of the two instances the case still pends, and the successful argument of the motion to quash or the demurrer is not the terminal stage of the litigation. This analogy is thus treated in *Puthoff* v. *Owens-Illinois Glass Co.*, 18 Ohio Ops. 282, 30 Ohio L. Abs. 653 [31 N.E.2d 684, 686]:

"The sustaining of a motion to quash service of summons places a plaintiff in a position analogous to that in which he finds himself when a demurrer to his petition is sustained. Neither order affects the continued pendency of the case. The plaintiff may still be able to amend his petition, so as to state a cause of action in the one case, or obtain service upon the defendant in the other, so that the court may grant to him all the relief to which the merits of his case entitle him. Or the court may by later order set aside its original ruling and sustain the sufficiency of the pleading or service. And the court up to that point has done nothing to prevent it from exercising its full jurisdiction to grant relief to the plaintiff."

In the second amended complaint the allegation that the hoist which allegedly caused the fatal accident was sold and installed prior to the date when the "Certificate of Surrender of Right to Transact Intrastate Business" was filed by the corporation, so that the liability was actually incurred before the surrender, invoked clearly for the first time the provisions of section 6504 of the Corporations Code:

"A foreign corporation which has surrendered its right to transact intrastate business pursuant to Chapter 6 of this part may be served with process in any action *upon a liability or obligation incurred within the State prior to such surrender* by delivery of the process to the Secretary of State ... and no court order authorizing such service shall be required." (Italics added.)

Bouvier's Law Dictionary (3d rev., 8th ed. 1914) volume 2, page 1950, defines liability as: "Responsibility; the state of one who is bound in law and justice to do something which may be enforced by action.... This liability may arise from contracts either express or implied, or in consequence of torts committed.

"The state of being bound or obliged in law or justice."

In *Wood* v. *Currey*, 57 Cal. 208, 209, it is said: " 'Liability' is defined: 'Amenability or responsibility to law; the condition of one who is subject to a charge or duty which may be judicially enforced.' (Abbott's Dict. 38.) And it may arise from contracts expressed or implied, or in consequence of torts."

In *Union Oil Co.* v. *Basalt Rock Co., Inc.*, 30 Cal.App.2d 317, 319-320 [86 P.2d 139], it is said that the words "liability" and "obligation," "...are often used synonymously, though 'liability' has a more comprehensive meaning. Liability is a condition which creates a duty to perform an act, but the performance may be immediate or in the future. [Citation.]" (See also 53 C.J.S., Liability, pp. 17-18.)

The foregoing definitions make clear the evident legislative intent to subject to suit in this state all foreign corporations as to claims arising from business formerly done by them in the State of California.

Further confirmation is contained in those cases which discuss a similar provision in section 359 of the Code of Civil Procedure, where the question of the "liability or obligation" of stockholders is involved.

A rather extended but carefully considered analysis of the term "liability" is contained in *Coulter Dry Goods Co.* v. *Wentworth*, 171 Cal. 500, 502-504 [153 P. 939]: " 'In Rapalje's Law Dictionary, in speaking of "liability" in contradistinction to "debt," it is said that "liability is the condition of being actually or potentially subject to an obligation; is used either generally as including every kind of obligation or in a more special sense to denote inchoate, uncertain or imperfect obligations as opposed to debts, the essence of which is that they are ascertained and certain." Within these definitions it is quite apparent that the word "liability" was used in our [C]onstitution and section of the code in a much more comprehensive sense than the word "debt." While, in a comprehensive sense, "liability" would include a debt, it is quite clear that this is not the sense in which it was used in the provision of the [C]onstitution and section of the code. The "liability" referred to there was not such as would arise from the existence of obligations of a corporation which were then due and payable or presently enforceable—"debts contracted"—but to such legal obligations or "liabilities" as might be "incurred" by the corporation, although such liabilities might not be capable of enforcement except upon some contingency or in the future. Such liability may of course exist without right of immediate enforcement against the corporation. Within this view of what constitutes "liability" as distinguishable from the creation of a "debt," it is apparent that under the provisions of the [C]onstitution and section a "liability" is created when a contract binding on it is made by a corporation and independent of any ques-

tion as to whether that ''liability'' is absolute or contingent or as to when the right to enforce it may accrue; and therefore that those who are stockholders when the ''liability'' is created or incurred are alone liable in any actions arising from its breach. Testing by this rule the contract entered into between the corporation and the plaintiff made in June, 1906, whereby the corporation bound itself to receive and pay for the goods which the latter contracted to deliver to it, there can be no question but that the making of this contract created a ''liability'' on the part of the corporation to perform its part of it. It is true that no debt would exist against the corporation until the goods were delivered. But the responsibility of stockholders is by the provisions of our law made broader than a responsibility for debts. It embraces all ''liabilities'' as well. When the plaintiff, pursuant to the terms of the contract, delivered and the corporation accepted the goods, an indebtedness arose in favor of the plaintiff enforceable in an action. But this was simply the accrual to plaintiff of a right to enforce payment on compliance by it with the terms of the contract previously entered into between the parties under which the corporation then obligated itself and incurred the liability to do so. The making of the contract would necessarily have to be relied on and proven in any action proceeding from an alleged breach of it. The right of action for a failure to perform according to its terms would result from the obligation or liability to perform which was created and incurred at the time when the contract was entered into. In the instant case the breach of the contract arose from a failure of the corporation to pay for the goods when delivered, and this gave a cause of action to the plaintiff under the contract for the debt. But under the provisions of the [C]onstitution and code the responsibility of the stockholder is not solely for the debts of the corporation, but also for its liabilities created while they are such. Here a debt was to arise subsequent to the making of the contract. But the liability of the corporation to pay it when it should arise was created when the contract was made under which it was incurred . . . .' ''

In *Hunt* v. *Ward,* 99 Cal. 612, 615 [34 P. 335, 37 Am. St. Rep. 87], the court said: ''Of course, there is a clear and wide distinction between the creation of a liability and the accruing of a cause of action thereon; . . . A liability may be absolute or contingent; it may be unconditional or limited; it may be presently enforceable by action, or there may be time

given for its performance; but, whatever its character, it is created by the consummation of the contract, act, or omission by which the liability is incurred.''

· (See also 55 A.L.R., p. 1070 et seq.)

*Chambers* v. *Farnham,* 182 Cal. 191, 195-196 [187 P. 732] held: ''The narrow question remaining here is whether such a liability on the part of the corporation is incurred at the time of the execution of the contract or at the time of the breach, or possibly at the time the damage is suffered. In the light of the views announced in the leading case of *Hunt* v. *Ward,* 99 Cal. 612 [34 P. 335, 37 Am. St. Rep. 87] and the long line of cases following and approving the doctrine there enunciated, culminating in the comparatively recent case of *Coulter Dry Goods Co.* v. *Wentworth,* 171 Cal. 500 [153 P. 939] where the cases were reviewed and the matter exhaustively considered, we deem this question no longer open to discussion. The *liability* of the corporation to respond in damages for any failure to perform the covenants contained in its contract was necessarily created or incurred by the execution of the contract, notwithstanding that no right of action could accrue until a breach. We have already seen (*Hunt* v. *Ward, supra*) that whatever the character of the liability, whether absolute or contingent, unconditional or limited, presently enforceable by action or not, 'it is created by the consummation of the contract, act, or omission by which the liability is incurred.' Here, the liability being created by contract, it was the consummation of the contract that created the liability. . . . . The words 'contract, act or omission,' are used distributively, as indicating possible different sources of liability, such as contract, negligence, etc. Here the source of liability was the contract. As said in *Coulter Dry Goods Co.* v. *Wentworth, supra,* . . . *when the corporation* made its contract with the plaintiffs, it *'incurred a liability for any breach of the contract which it might commit,* and its stockholders were equally liable for such breach. The stockholders *who were such when the contract was made* are. therefore, bound under the [C]onstitution, which holds them for the ''liability'' incurred by the corporation during the time that they were stockholders.' ''

■ It is interesting to reflect that if there had been a formal judgment of dismissal after the ruling on the first motion to quash, and no appeal had been taken therefrom, such situation would not have prevented the plaintiff from bringing a second independent suit against the same defendant. A

judgment which is not based on the merits but merely on lack of jurisdiction does not prevent a second suit on the same basic grounds as the first in a court having jurisdiction. It is said in 49 American Law Reports 2d 1040: "It is well established that a judgment for a defendant which is not on the merits does not bar him from maintaining another action on the same cause of action. Consequently, a judgment for defendant based on lack of jurisdiction does not bar the plaintiff from bringing an action on the same cause in a court having jurisdiction."

(See also *Wills* v. *Pauly,* 116 Cal. 575, 582 [48 P. 709]; *Slaker* v. *McCormick-Saeltzer Co.,* 179 Cal. 387, 389 [177 P. 155]; *Heine Piano Co.* v. *Bloomer,* 183 Cal. 398, 404 [191 P. 900]; *Hogeberg* v. *Industrial Acc. Com.,* 201 Cal. 169, 181-183 [256 P. 413]; *Helvey* v. *Castles,* 73 Cal.App.2d 667, 672 [167 P.2d 492].)

The same general theory should be applied with even greater readiness in a situation in which the pending action was not terminated as a result of the ruling, but was continued in full force, thus providing an occasion for the amendment of the complaint to bring the defendant within the orbit of the court's jurisdictional control.

The order to show cause is discharged, and the peremptory writ of mandate denied.

Brown (R.M.), J., and Stone, J., concurred.