[Sac. No. 86.   Department Two.—March 25, 1896.]

ALEXANDER McBEAN, Appellant, v. CITY OF FRESNO and W. H. McKENZIE, Treasurer, Respondents.

Municipal Corporations—Disposition of Sewage out of City Limits—Validity of Contract—Power of Trustees.—Proper sewers are essential to the hygiene and sanitation of a municipality, and the board of trustees of a city having power to establish, construct, and maintain drains and sewers have power to contract for the disposition of the outfall outside of the city limits as an essential part of the maintenance of a sewer system; and a contract by such board of trustees for a sewer farm for the reception and treatment of the waste matter from the sewers of the city, and to pay annually a specified sum therefor.

112  159
112  313
112  547

112  159
118  484
a118 527
118  530
118  553

112  159
126  306

112  159
124  68
125   8

112  159
131  298
131  309

112  159
135  498
135  501

112  159
h143 181
e143 182
j143 184
j143 185

112  159
e143 710

for the period of five years, is valid, operative, and binding upon the city.

Id.—Contract for Indebtedness in Excess of Revenue.—The contract for future annual payments for the sewer farm is not for a present liability, and is not obnoxious to the provision that contracts for indebtedness in excess of the revenue for each year are void, where the annual payments, as they fall due in each year, are within the revenue of that year provided for the sewer fund; though the contractor takes the risk that, if there are not revenues sufficient for any one year to meet the annual payment for that year as it falls due, he must lose the unpaid claim, as no claim for any one year can be carried forward as a charge against the income and revenue of a succeeding year.

Id.—Power of City to Make Contracts in Futuro—Restraint upon Legislative Power.—Although the courts look with disfavor upon contracts by municipalities involving the payment of moneys which extend over a long period of ·time, as tending to create a monopoly, and to involve an undue restraint of the legislative power of the successors of the municipal board, and they will not be upheld without a clear showing of a reasonable necessity for their execution; yet, where it appears that, at the time such a contract was entered into, it was fair and reasonable, and prompted by the necessities of the case, or was then advantageous to the municipality, it will be upheld, and not construed as an unreasonable restraint upon the powers of succeeding boards, in the absence of express limitation as to the period of time for which a contract may be made.

Appeal from a judgment of the Superior Court of Fresno County and from an order denying a new trial. J. R. Webb, Judge.

The facts are stated in the opinion of the court.

*E. D. Edwards*, and *W. C. Graves*, for Appellant.

The contract in question was not invalid, because it extended over a period of five years, as no liability for payment is incurred except for the payment of each year's work after it has been performed, and, as each year's work is performed, the city will provide for its payment. (*Crowder* v. *Sullivan*, 128 Ind. 486; *East St. Louis* v. *East St. Louis Gas Co.*, 98 Ill. 430; 38 Am. Rep. 97; *Weston* v. *Syracuse*, 17 N. Y. 113; *Garrison* v. *Howe*, 17 N. Y. 465; *Grant* v. *Davenport*, 36 Iowa, 396; *Indianapolis* v. *Gas Light Co.*, 66 Ind. 396; *Valparaiso* v. *Gardner*, 97 Ind. 1; 49 Am. Rep. 416; *Atlantic City Water Works Co.* v. *Read*, 50 N. J. L. 665; *Cook* v. *Racine*, 49 Wis. 243; *San Francisco Gas Light Co.* v. *Dunn*, 62 Cal.

585; *Woods* v. *Oklahoma*, 2 Oklahoma, 158; *Riehl* v. *San Jose*, 101 Cal. 442; *Shaw* v. *Statler*, 74 Cal. 258.)

*L. W. Moultrie*, for Respondents.

As the contract is not for the construction or cleaning of sewers within the city, it does not fall within the statutes of 1885, and it is within the prohibition of the constitution and the municipal corporation act, as it covers a period of five years, and there could not possibly be money enough in the treasury to meet the liability incurred, though paid in installments. (Stats. 1885, p. 147; Const., art. XI, sec. 18; Stats. 1883, p. 255; *Wallace* v. *Mayor etc. of San Jose*, 29 Cal. 181, 187; *San Francisco Gas Co.* v. *Brickwedel*, 62 Cal. 641; *Shaw* v. *Statler*, 74 Cal. 258; *Sutro* v. *Pettit*, 74 Cal. 332; 5 Am. St. Rep. 442; *Schwartz* v. *Wilson*, 75 Cal. 502; *Smith* v. *Broderick*, 107 Cal. 644; 48 Am. St. Rep. 167; *Niles Water Works* v. *Mayor etc. of Niles*, 59 Mich. 312; *Smith* v. *Newburgh*, 77 N. Y. 131; Dillon on Municipal Corporations, sec. 134; *Springfield* v. *Edwards*, 84 Ill. 626; *Prince* v. *Quincy*, 105 Ill. 138; 44 Am. Rep. 785; *Nougues* v. *Douglass*, 7 Cal. 65; *People* v. *Johnson*, 6 Cal. 499; *Von Schmidt* v. *Widber*, 105 Cal. 151, 157; *Young* v. *Board of Education*, 40 Am. St. Rep. 340, note; *Gutta Percha etc. Mfg. Co.* v. *Ogalalla*, 42 Am. St. Rep. 696, note.) By entering into a five year contract, the city trustees would be surrendering or bargaining away their legislative powers and duties. (*Oakland* v. *Carpentier*, 13 Cal. 540; Dillon on Municipal Corporations, sec. 97.)

Henshaw, J.——The city of Fresno duly and regularly, so far as form and procedure are concerned, entered into a contract with plaintiff by which plaintiff agreed to take care and dispose of the sewage of the city for the period of five years for the sum of four thousand nine hundred dollars per annum, payable quarterly. Plaintiff was required to give, and did give, a bond in the sum of ten thousand dollars, to which extent he agreed to reimburse the corporation for any liability or loss it

CXII. Cal.—11

might incur or suffer by reason of a faulty performance of his contract. No natural means were available to Fresno for the disposition of its sewage. It had provided sewers, but had made no provision for the care of their contents. These were to be discharged beyond the city limits. But, before the sewers could be used, a sewer farm was necessary for the reception and treatment of the waste matter. The city had secured no such farm. Under these circumstances, the contract with McBean was entered into. He made the necessary expenditures, and year by year performed his contract according to its letter and spirit. Each year in turn the city levied, collected, and apportioned to the sewer fund a tax to cover the yearly amount due McBean, and duly audited and paid his demands on the fund. This continued for three years. During the fiscal year ending May 31, 1894, plaintiff performed his contract, but the city refused payment, upon the ground that the contract was void. McBean then instituted this action, charging in the first count for the value of labor and services furnished at defendant's request, and, in the second, pleading at length and standing upon the contract in question. He also averred that there was in the sewer fund, not otherwise appropriated and available for the payment of his demand, more than three thousand dollars, and such is the undisputed fact.

Indeed, none of these facts is disputed. Upon the trial most of them were admitted under stipulation, and others proved without conflict. The court sustained a general demurrer to the second cause of action. At the close of plaintiff's case a motion for a nonsuit upon the cause of action in *assumpsit* was made and granted. These two rulings are the errors complained of.

Against the validity of the contract the first objection urged is, that the city had no power to enter into this contract for the care and disposition of its sewage, because "it has no reference whatever to the sewage *within the city*, but provides for the care and disposal of the sewage from the outfall of the sewers some distance from

the city." We see no force in this objection. Proper sewers are in this day so essential to the hygiene and sanitation of a municipality, that a court would not look to see whether a power to construct and maintain them had been granted by the charter, but rather only to see whether by possibility the power had been expressly denied. In the case of the city of Fresno, a city of the fifth class, the power is, however, expressly conferred. "The board of trustees shall have power to establish, construct, and maintain drains and sewers." (Municipal Corporation Bill, sec. 764, subd. 5.) Disposition of the outfall is an essential part of the maintenance of a sewer system, and it must often be necessary for inland cities to arrange for that disposition without their corporate limits. (*Coldwater* v. *Tucker*, 36 Mich. 474; 24 Am. Rep. 601.)

But the controlling questions presented by this contract for determination are: 1. Does it violate the constitution or the charter of the city of Fresno? 2. Does it operate as a surrender or suspension of the legislative powers of the trustees of the city?

The constitution provides, article XI, section 18: "No . . . . city . . . . shall incur indebtedness or liability in any manner or for any purpose exceeding in any year the income and revenue provided for it for such year, without," etc. . . . . . "Any indebtedness or liability incurred contrary to this provision shall be void."

The charter of the city of Fresno provides, in terms harmonious with those of the constitution: "The trustees shall not create, audit, allow, or permit to accrue, any debt or liability in excess of the available money in the treasury that may be legally apportioned and appropriated for such purposes," etc. (Stats. 1883, p. 255.)

The charter of the city of Fresno authorizes the levying and collecting of a tax not exceeding ten cents on each one hundred dollars for the sewer fund. (Municipal Corporation Bill, sec. 763, subd. 3.) No question is here presented but that the tax which may thus be

collected is ample for the payment of the sums due or to become due to plaintiff under his contract, and the question of the validity of the contract is free from any embarrassment from this consideration.

In the constitutional provision under consideration the framers had in mind the great and ever growing evil to which the municipalities of the state were subjected by the creation of a debt in one year, which debt was not, and was not expected to be, paid out of the revenues of that year, but was carried on into succeeding years, increasing like a rolling snowball as it went, until the burden of it became almost unbearable upon the taxpayers. It was to prevent this abuse that the constitutional provision was enacted. In *San Francisco Gas Co.* v. *Brickwedel*, 62 Cal. 641, and in *Shaw* v. *Statler*, 74 Cal. 258, the question is discussed, and the interpretation of the constitutional provision laid down, and the reasons for it given. Each year's income and revenue must pay each year's indebtedness and liability, and no indebtedness or liability incurred in one year shall be paid out of the income or revenue of any future year. The taxpayers of municipalities are thus protected against the improvident creation of inordinate debts, which may be charged against them and their property in ever increasing volume from year to year.

Upon the other hand, the correlative rights of a creditor of the city under these circumstances, and under this law, have been recently set forth with exactness and clearness by Mr. Justice Harrison in *Weaver* v. *San Francisco*, 111 Cal. 319: "Whoever deals with a municipality does so with notice of the limitation of its powers, and with notice also that he can receive compensation for his labor and materials only from the revenues and income previously provided for the fiscal year during which his labor and materials are furnished; and with the knowledge, too, that all other persons dealing with the municipality have the same rights to compensation, and are subject to the same limitations, as he is. Even though at the time of making his contract there are

funds in the treasury sufficient to meet the amount of his claim, he is charged with notice that these funds are liable to be paid out for municipal expenditures before his contract can mature into a claim against the city, and if others whose claims have accrued subsequent to his are able to intercept these funds, he is in the same condition as any creditor who has dealt with one whose assets are exhausted before he presents his claim. He acquires no claim in the nature of a lien upon these funds for the amount of his demand, nor is there any legal obligation upon the municipality any more than upon any other debtor, to pay the claims against it in the order in which they are incurred, unless they are presented in that order, and in such condition and with such formalities as entitle the claimant to immediate payment. In dealing with the municipality he must rely upon the integrity of its officers that they will not incur any liabilities during the year in excess of the income and revenues provided for that year, and, as a prudent man, he will ascertain not only the amount of that income, but also the amount of the claims already existing, and of those that are likely to be incurred."

In the case of contracts extending over a period longer than one year, it may be readily seen that the municipality is abundantly protected, and that it is the contractor therewith who subjects himself to peril and risk of loss. If there are not revenues for any given year sufficient and available for the payment of his claims for that year, those claims become waste paper, and are not carried over as a charge against the income and revenue of a succeeding year.

This construction of the law in our state removes a potent objection found by the supreme court of Michigan to sustaining a contract under a law similar to our own, where the life of the contract was for several years. Says the court: "There can be no doubt in our opinion that this whole contract obligation is a liability to the full extent of the thirty years rental, and it is equally clear that all unpaid sums will be aggregated until

paid." (*Niles Water Works* v. *Mayor etc. of Niles*, 59 Mich. 312.) In this state such a rule would not obtain, and the contract under consideration is left with its validity to be determined primarily as the question is answered, does it or does it not create a debt or liability for a given year exceeding the revenues of that year?

And upon this it may be said at the outset that there is a contrariety of opinion in the courts of the states which have been called upon to interpret constitutional or charter provisions similar to or identical with our own. The state of Michigan, as will be observed from the case last cited, holds such contracts to be void, for the reason above quoted. Ohio, New Jersey, Montana, and Oregon have reached the same conclusion, and perhaps other states. (*State* v. *Medbery*, 7 Ohio St. 526; *Davenport* v. *Kleinschmidt*, 6 Mont. 502; *Salem Water Co.* v. *Salem*, 5 Or. 29; *Atlantic City Water Works Co.* v. *Read*, 50 N. J. L. 665.) Upon the other hand, in Illinois, Pennsylvania, Massachusetts, New York, Iowa, Indiana, and Oklahoma (and it may be in others which have not come beneath our notice) it is uniformly held that contracts such as these are not violative of the constitutional inhibition. (*East St. Louis* v. *East St. Louis Gas Light etc. Co.*, 98 Ill. 415; 38 Am. Rep. 97; *Appeal of Erie*, 91 Pa. St. 398; *Smith* v. *Inhabitants of Dedham*, 144 Mass. 177; *Weston* v. *Syracuse*, 17 N. Y. 110; *Grant* v. *Davenport*, 36 Iowa, 396; *Valparaiso* v. *Gardiner*, 97 Ind. 1; 49 Am. Rep. 416; *Indianapolis* v. *Indianapolis Gas Light etc. Co.*, 66 Ind. 396; *Territory* v. *Oklahoma*, 2 Oklahoma, 158.)

In a certain very restricted sense it may be said that a liability is created by a contract such as this, but to call it a present liability for the aggregate amount of the payments in the contract contemplated thereafter to be made is not legally permissible. A liability to the city would arise upon breach of contract, but the constitution never meant to protect the city from the consequences of its own willful and tortious acts. A liability might arise against the city for the negligence of its

officers, and the damages due to an individual who had suffered therefrom might be great, but such liability for a municipal wrong the constitution never meant to protect against.    When it is come to consider the contractual relations between the city and appellant, it is at once seen that the city cannot be liable in any one year for more than four thousand nine hundred dollars, an amount far within the revenue derived to the sewer fund; and, further, that it cannot become liable for this amount at all until faithful service rendered by the contractor each year.    If the city in any one year should fail to collect into its sewer fund moneys sufficient to pay the just claims of the contractor, then, as above said, it would be the contractor's loss, the city would be chargeable with no financial responsibility therefor, and the result at the most, so far as it was concerned, would be a failure upon the part of its officers to observe good faith in their dealings.

There need be here no struggles with the niceties of definitions to be given to debt or liability.    An able discussion of those questions will be found in the case of *Valparaiso* v. *Gardiner, supra*.    We base our views upon the conviction that, at the time of entering into the contract, no debt or liability is created for the aggregate amount of the installments to be paid under the contract, but that the sole debt or liability created is that which arises from year to year in separate amounts as the work is performed.

These views find abundant support in the adjudicated cases in this state.    Article VIII of the former constitution of California provided that the legislature shall not create any debts or liabilities in any manner which shall exceed the sum of three hundred thousand dollars, except under certain specified contingencies.    The state made a contract for the care of its prison, for convict labor, etc., for the period of five years, agreeing to pay therefor the sum of ten thousand dollars per month. The act came before this court for review in *State* v. *McCauley*, 15 Cal. 429, where the question was elabo-

rately argued, and fully considered by the court. Chief Justice Field, in delivering the opinion of the court, spoke as follows: " The unconstitutionality of the act is asserted on two grounds: 1. That it appropriated the sum of six hundred thousand dollars, and thus created a debt or liability against the people of the state exceeding the limit prescribed by the eighth article of the constitution. . . . . The contract provides for the payment of ten thousand dollars a month, and the act appropriates this sum per month. The appropriations are to take effect, and the services are to be rendered, in future. Until the services are rendered there can be no debt on the part of the state. The lessee could not have claimed, at any time after the making of the contract, the aggregate of all the monthly installments, because the state never owed him that amount. The state only became indebted as the services were each month performed. . . . . The eighth article was intended to prevent the state from running into debt, and to keep her expenditures, except in certain cases, within her revenues. These revenues may be appropriated in anticipation of their receipt as effectually as when actually in the treasury. The appropriation of the moneys when received meets the services as they are rendered, thus discharging the liabilities as they arise, or rather anticipating and preventing their existence. The appropriation accompanying the services operates, in fact, in the nature of a cash payment." This interpretation, after further consideration and argument, was reaffirmed in *McCauley* v. *Brooks*, 16 Cal. 1, and again in *Koppikus* v. *State Capitol Commrs.*, 16 Cal. 248. In *People* v. *Arguello*, 37 Cal. 524, it is said: "A sum payable upon a contingency is not a debt, or does not become a debt until the contingency has happened."

These decisions being before the framers of the present constitution, under familiar rules of interpretation it will be held that their enactment of similar provisions was made in the light of them.

*Wallace* v. *Mayor of San Jose*, 29 Cal. 181, is not in

conflict with these decisions. The contract there contemplated a payment which might become a debt in the year in which the contract was executed, as well as in some future year. Under the peculiar language of the charter, which forbade the creation of any debt unless the money was actually in the treasury to meet it, it was declared that the council had no authority to provide for the creation of a debt to arise in the future, any more than to create one directly and *in præsenti*.

Upon the second proposition, namely, whether or not the contract operates as a surrender or suspension of the legislative powers of the trustees of the city, it is to be observed that there is in this state no inhibition against the making of a contract by a municipal board which shall extend for more than one year, or even beyond the term of office of the board which makes it. If the legislature desired to restrict municipalities in this particular, it could easily do so by the passage of a law such as exists in some other states declaring void any contract upon the part of a municipality which is to extend beyond the current fiscal year, or beyond the term of office of the authorities which enter into it. But, even in the absence of such provisions, courts look with disfavor upon contracts by municipalities involving the payment of moneys which extend over a long period of time; 1. Because such contracts in their nature tend to create a monopoly in favor of the other party thereto for supplying the city with the article contracted for; 2. Because they may involve an undue restraint upon the legislative powers of the successors of the board, and prevent those successors from availing themselves of a change in the times, of opposition, of reduced rates, or of other causes operating legitimately to decrease the price of the commodity, of which decrease in price the city by reason of its contract cannot avail itself.

There is thus by law and reason a well-defined limit set to such contracts. In the absence of any other objection to them, they will not be upheld without a clear showing of a reasonable necessity for their execution.

But if, on the other hand, it be made to appear that at the time of its execution the contract was fair and just and reasonable, and prompted by the necessities of the situation, or was in its nature advantageous to the municipality at the time it was entered into, then such a contract will not be construed as an unreasonable restraint upon the powers of succeeding boards.

In *San Francisco Gaslight Co.* v. *Dunn*, 62 Cal. 585, this court says: "In the absence of express limitation as to the period of time for which a contract may be made, we would hold, perhaps, that the contract with the plaintiff for five years was not beyond the power of the supervisors." In *Riehl* v. *San Jose*, 101 Cal. 442, an action was brought to set aside a contract for five years, made by the city with an electric company for the lighting of its streets. The complaint sounded in fraud, and further declared that the contract was against public policy, illegal and void. The contract was upheld, it being found that there was no fraud, and "that the members of the common council acted as honest men, and exercised their honest discretion for the best interests of the city."

We have here, then, a contract made for a purpose expressly authorized by the charter, a contract which looked to supply the city with an absolute need, a contract which pertained to the ordinary expenses of the city, and, together with other like expenses, was well within the limit of the current revenues authorized by its charter annually to be provided for this specific purpose. The term of the contract was fair indeed, in view of the considerable expense which the evidence showed plaintiff was obliged to undergo to fulfill his undertaking. Under these circumstances we hold the contract to be valid, operative, and binding upon the city.

The judgment and order are reversed and the cause remanded, with directions to the trial court to overrule defendant's demurrer.

McFarland, J., and Garoutte, J., concurred.