[L. A. No. 15177. In Bank.—November 20, 1935.]

FRED A. KRENWINKLE, Appellant, v. CITY OF LOS ANGELES (a Municipal Corporation) et al., Respondents.

George E. Cloud for Appellant.

Ray L. Chesebro, City Attorney, Frederick von Schrader, Assistant City Attorney, James L. Patten, Call & Murphey, Frank P. Doherty, Robert B. Murphey, O'Melveny, Tuller & Myers and Louis W. Myers for Respondents.

WASTE, C. J.—Plaintiff, a taxpayer, brings this action to compel cancellation of two lease agreements pertaining to land used as a municipal airport, and to compel the City of Los Angeles to discontinue and abandon the operation of the airport established and being maintained on the demised premises. Four demurrers to the amended complaint were sustained without leave to amend. Plaintiff appeals from the judgment of dismissal entered on the motion of defendants, following the order sustaining the demurrers.

The cause of action is based upon the contentions, as alleged in the amended complaint, that the leases are void because, first, the aggregate of the total amount of rental instalments to be paid by the city exceeds the income and revenue provided by the city for the necessary and requisite expenditures of the city for the year, and therefore works a violation of article XI, section 18, of the state Constitution, which provides that a municipal debt incurred in any year shall not exceed the income and revenue provided for such year without the assent of the voters of the city, given at an election held for the purpose, nor unless other provisions of the Constitution have been complied with.

A second contention is that the charter of the City of Los Angeles prohibits the city from engaging in any "purely commercial or industrial enterprise" without the approval of the voters of the city manifested at an election. The conduct of a municipal airport, it is contended, falls within the inhibition. No phase of the question of the lease or maintenance of the airport was submitted to the voters of the city for ratification at an election.

In addition to answering the two principal contentions just noted, the respondents advance a number of technical objections to the sufficiency of the amended complaint, raised by special demurrers, but we deem discussion of them unnecessary, for we are of the view that the demurrers were properly sustained on the general ground of failure of the plaintiff to

state a cause of action. We therefore confine our discussion to the two main contentions advanced by the appellant.

■ It is well-settled law in this state that the execution of a *bona fide* lease for a term of years does not create an immediate indebtedness or liability in excess of the instalment of rent presently due. Appellant has apparently marshaled the total of the amounts of the instalments to fall due during the terms of years of the leases in order to allege an aggregate of the purported positive, direct liability or municipal debt. Such construction of the leases is not a proper one under the authorities. This court has held that contracts like the leases here being examined do "not create any liability at the time they [are] executed, except a contingent future liability". (*Doland* v. *Clark*, 143 Cal. 176, 180 [76 Pac. 958].) "The city had the right," says the court in the opinion (p. 181), "to make contracts, if otherwise unobjectionable, to continue for . . . years", and to provide for payments at different times (citing other decisions of this court). "In order for these contracts to appear void under the constitution," continues the court, "it must appear that an indebtedness or liability has been incurred for some year exceeding the income and revenue provided for such year." Plaintiff's complaint fails to show any such situation. The leading cases on this subject in this state are *McBean* v. *Fresno*, 112 Cal. 159 [44 Pac. 358, 53 Am. St. Rep. 191, 31 L. R. A. 794], and *Smilie* v. *Fresno County*, 112 Cal. 311 [44 Pac. 556]. In those cases, the authorities from other states are reviewed, and the provision of the Constitution, *supra*, is analyzed. All the city contracted to pay in the case of the leases now before us was one sum for the first year of the term, payable in advance, and an agreed annual rental thereafter, payable in equal monthly instalments. Such a lease is valid and creates no indebtedness for future rentals. (*Walla Walla* v. *Walla Walla Water Co.*, 172 U. S. 1, 19, 20 [19 Sup. Ct. 77, 43 L. Ed. 341]; *City of South Bend* v. *Reynolds*, 155 Ind. 70 [57 N. E. 706, 707, 49 L. R. A. 795].)

■ Nowhere in the leases under consideration is there anything to indicate, nor does appellant claim, that the lease contracts are anything more than leases. Each lease, it is true, contains an option granting to the city the right to purchase the leased property when all rentals and other charges are paid and the city has otherwise complied with the terms

and provisions of the leases. The purchase price does not decrease with the amount of rent paid, neither can the rentals paid be applied on the option price. The leases provide that the rental paid is for and in consideration of the use and occupation of the property which the city receives and for the continued quiet use and enjoyment of it during the term for which the instalment is paid. The sole debt or liability created by the leases is "that which arises from year to year in separate amounts" (*McBean* v. *Fresno, supra*), as the lessor furnishes the quiet use and enjoyment of the leased premises. The nature and effect of these leases serve to distinguish them from the leases construed in such cases as *City and County of San Francisco* v. *Boyle*, 195 Cal. 426 [233 Pac. 965] ; *Mahoney* v. *San Francisco*, 201 Cal. 248 [257 Pac. 49], and other cases in which the leases "create a direct or indirect obligation" on the lessees to pay the total price at the time the leases are entered into, even though the payments are to be made over a term of years. As to such contracts, see *California Pac. Title & Trust Co.* v. *Boyle*, 209 Cal. 398, 407 [287 Pac. 968]. In cases like that presented by the leases at bar, "the indebtedness is not created until the consideration has been furnished ; in the others, the debt is created at once, the time of payment only being postponed." (*Walla Walla* v. *Walla Walla Water Co., supra*.)

The second contention of appellant requiring discussion is that the City of Los Angeles is prohibited from maintaining and conducting the airport, as it will be thereby engaging in a purely commercial or industrial enterprise, the doing of which is forbidden by the city charter. This question must also be decided against appellant. The state of California has authorized the acquisition and maintenance of airports by municipalities. (Stats. 1927, chap. 267, p. 485.) No provision of the Los Angeles city charter forbids it. The conduct and maintenance of an airport by a municipality is a public enterprise, not "purely commercial or industrial". No better statement of this proposition has been called to our attention than is found in the discussion of the subject by Mr. Justice Cardozo in *Hesse* v. *Rath*, 249 N. Y. 436 [164 N. E. 342]. Because of the advance in the science of aviation, and the universally recognized need of making provision for navigation of the air, a quotation from the opinion is here appropriate : "A city acts for city purposes when it builds

a dock or a bridge or a street or a subway. (*Sun Printing & Pub. Assn.* v. *New York,* 152 N. Y. 257 [46 N. E. 499, 37 L. R. A. 788].) Its purpose is not different when it builds an airport. (*Wichita* v. *Clapp,* 125 Kan. 100 [263 Pac. 12, 63 A. L. R. 478].) Aviation is today an established method of transportation. The future—even the near future—will make it still more general. The city that is without the fore-sight to build the ports for the new traffic may soon be left behind in the race of competition.''

The judgment is affirmed.

Shenk, J., Conrey, J., Curtis, J., Langdon, J., Thompson, J., and Seawell, J., concurred.