[Sac. No. 6106. In Bank. May 18, 1950.]

JAMES S. DEAN, as Director of the Department of Finance etc., Petitioner, v. THOMAS H. KUCHEL, as State Controller, etc., Respondent.

Fred N. Howser, Attorney General, E. G. Benard, Assistant Attorney General, and Leonard M. Friedman, Deputy Attorney General, for Petitioner.

Ralph I. McCarthy and J. D. Lear for Respondent.

CARTER, J.—The controversy here presented involves the validity of a transaction between the state and Pacific-

Southwestern Company, a partnership. In 1949 the Legislature passed a statute reading: "Notwithstanding any other provision of law, the Director of Finance, with the consent of any state agency having jurisdiction thereof, is hereby authorized and empowered to let to any person, firm or corporation, for a term not to exceed forty years any real property which belongs to the State, regardless of whether such property was acquired under any law specifying that such property was to be devoted to any particular use or purpose. Any instrument by which such property is let as aforesaid shall require the lessee therein to construct on the demised premises a building or buildings for the use of the State during the term thereof, shall provide that title to such building shall vest in the State at the expiration of said term and shall contain such other terms and conditions as the Director of Finance may deem to be in the best interests of the State.

"This section shall remain in effect until the ninety-first day after final adjournment of the 1951 Regular Session of the Legislature." (Gov. Code, § 13114 as added by Stats. 1949, ch. 1089.) In January of this year, pursuant to that statute, the state and company executed an instrument by which the state, being the owner of certain real property, "let" and "hired" that property to the company for a term of 35 years for the sum of $1.00, called a ground lease. The company agreed to erect immediately on the property an office building in accordance with specified plans and specifications, the building to be completed within 325 days. It is stated that the company "leases to the State and the State hires from the Company" the property together with the building to be erected thereon for a term of 25 years at a monthly "rental" of $3,325 payable on or before the tenth day following the last day of each lease month; that is referred to as the building lease. The "rental" is paid "for and in consideration of the use and occupancy of the said real property, buildings and other improvements which the State receives and in consideration of the continued quiet use and enjoyment thereof as provided in Article 16 hereof, during each month for which said monthly rental is to be paid." The state is given the option on the expiration of 15 years and on 60 days' notice to terminate the agreement if at the time of the termination certain amounts have been paid to the company according to a specified schedule. Provisions are made in regard to taxes and insurance, the payment of

some of which by the company makes the "net" rental less. Upon the expiration of the 25-year building lease, all covenants having been performed, the 35-year ground lease ends and "all right title and interest in and to said real property and in and to all buildings situated thereon shall vest in the State." In any event and regardless of performance by the state, at the end of the 35-year ground lease, all rights of the company to the buildings and land shall "vest absolutely in the State."

It is urged that the instrument violates the constitutional provision reading in part: "The Legislature shall not, in any manner create any debt or debts, liability or liabilities, which shall, singly or in the aggregate with any previous debts or liabilities, exceed the sum of three hundred thousand dollars, except" and then follow certain exceptions and provision for approval by the voters. (Cal. Const. art. XVI, § 1.)

The latest authoritative ruling upon whether obligations incurred under instruments similar to the one here involved violate the debt limitation in the Constitution was made in *City of Los Angeles* v. *Offner*, 19 Cal.2d 483 [122 P.2d 14, 145 A.L.R. 1358], which was concerned with the debt limitation on municipal corporations and other local government agencies. (Cal. Const. art. XI, § 18.) It is conceded that the same principles apply to both constitutional provisions. There a contractor agreed to build an incinerator on city owned land which the city leased to him for 10 years at a rental of $1.00 per month, and he leased to the city the land and incinerator to be erected thereon for nine years and nine months, at a specified monthly rental. The city was given an option to buy the incinerator at various intervals during the term of the lease at a minimum price fixed by a schedule. If the city elected to exercise its option the purchase price was to be fixed by appraisers but not less than the minimums. Title to the incinerator was to remain in the contractor and if the option was not exercised it could be removed. This court stated the law to be: "It has been held generally in the numerous cases that have come before this court involving leases and agreements containing options to purchase that if the lease or other agreement is entered into in good faith and creates no immediate indebtedness for the aggregate installments therein provided for but, on the contrary, confines liability to each installment as it falls due and each year's payment is for the consideration actually furnished that year,

no violence is done to the constitutional provision. (*McBean* v. *City of Fresno*, 112 Cal. 159 [44 P. 358, 53 Am.St.Rep. 191, 31 L.R.A. 794]; *Smilie* v. *City of Fresno*, 112 Cal. 311 [44 P. 556]; *Higgins* v. *San Diego Water Co.*, 118 Cal. 524, 553 [45 P. 824, 50 P. 670]; *Doland* v. *Clark*, 143 Cal. 176, 180, 181 [76 P. 958]; *Krenwinkle* v. *City of Los Angeles*, 4 Cal.2d 611, 613 [51 P.2d 1098].) If, however, the instrument creates a full and complete liability upon its execution, or if its designation as a 'lease' is a subterfuge and it is actually a conditional sales contract in which the 'rentals' are installment payments on the purchase price for the aggregate of which an immediate and present indebtedness or liability exceeding the constitutional limitation arises against the public entity, the contract is void. (*Chester* v. *Carmichael*, 187 Cal. 287 [201 P. 925]; *In re City and County of San Francisco*, 195 Cal. 426 [233 P. 965]; *Mahoney* v. *City and County of San Francisco*, 201 Cal. 248 [257 P. 49]; *Garrett* v. *Swanton*, 216 Cal. 220 [13 P.2d 725].)

"The rule as applied to each of these situations is well stated in *Garrett* v. *Swanton, supra,* at page 226, as follows: 'The law is well settled in this state that installment contracts of any kind, where the installment payments are to be made over a period of years and are to be paid out of the ordinary revenue and income of a city, *where each installment is not in payment of the consideration furnished that year,* and the total amount of said installments when coupled with the other expenditures exceeds the yearly income, are violative of the constitutional provision in question unless approved by a popular vote. This is so whether the contract be denominated a mortage, lease, or conditional sale. . . . It is true that under the doctrine enunciated in *McBean* v. *City of Fresno*, 112 Cal. 159 [44 P. 358, 53 Am.St.Rep. 191, 31 L.R.A. 794] . . . contracts for the furnishing of property in the future have been upheld, but only where no liability or indebtedness came into existence until the consideration was actually furnished. In other words, such contracts are valid where each year's installment is within the city's income, and where each year's payment is for the consideration actually furnished that year.' " No useful purpose would be served by reviewing other cases on the subject. We find no logical distinction between the Offner case and the one at bar. It is true that there was an option to purchase in the former rather than a vesting of title at the end of the term in the instant case, but as far as liability is concerned,

the state under the instrument here is in a better position, for it gets title without the payment of anything other than the rental. The essence of the Offner rule is that the payments are for a month to month use of the building. Here it is clearly stated that the rentals are for that purpose. There is no substantial or logical difference between the option to purchase in the Offner case and the vesting of title at the end of the term in this case. True, the city was not bound to execute the option and thus pay the purchase price, but it was required to pay the rentals. Here the rentals also must be paid but the state need not pay any more. We are satisfied therefore that the instant transaction qualifies as a lease for the purpose of the debt limitation.

 It is argued that the instrument does not conform to the authorization stated in section 13114 of the Government Code (quoted *supra*), in that thereunder the lessee of the state land must erect buildings for the use of the state ''during the term thereof'' and the buildings must vest in the state at the end of ''said term''; that the lease, the term of which is referred to, is the ground lease; that here the buildings are to be erected for the use of the state during the term of the building lease rather than the ground lease; and that during the 10-year period from the end of the 25-year building lease to the end of the 35-year ground lease the building is for the use of the company rather than the state. We cannot agree. Under the lease the state is to have the use of the building during the 25-year period and own it absolutely at the end of that time if it pays the rent. Manifestly it will thus have it for all time including the next 10 years after the first 25 years. It then belongs to the state. The only situation under the lease in which the company could get control of the building would be in the event the state defaulted and the company elected to terminate the building lease, and in any event the company's interests are terminated at the end of 35 years. The main purpose of the section is to permit a leasing of state property for 40 years. As a limitation on that authority the lease must provide that the lessee shall erect buildings thereon for the state's use, that is, the state is not to lose the use of the property by the lease. That purpose is served in the instant case and it is not to be supposed that provisions cannot be made for the effect of a' breach of the lease by the state. On the contrary, the last clause in the first paragraph of the section declares that the lease shall contain such other terms and conditions as the

director may deem to be in the best interests of the state. It may well be that no builder could be obtained, or a higher price would be asked to the state's detriment if some measure of protection were not granted in case of default by the state. The state may prevent the occurrence of the contingency which would oust it from possession by performing under the lease.

It is ordered that a peremptory writ of mandate issue as prayed.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., and Spence, J., concurred.

EDMONDS, J.—In my opinion, even the most liberal construction of the contract which this court is asked to approve shows that the transaction is a subterfuge and therefore void within the rule applied in *City of Los Angeles* v. *Offner,* 19 Cal.2d 483 [122 P.2d 14, 145 A.L.R. 1358]. As stated by the Chief Justice in that case: "If . . . the instrument creates a full and complete liability upon its execution, or if its designation as a 'lease' is a subterfuge and it is actually a conditional sales contract in which the 'rentals' are installment payments on the purchase price for the aggregate of which an immediate and present indebtedness or liability exceeding the constitutional limitation arises against the public entity, the contract is void." (P. 486.)

The contract which the state has made with Pacific-Southwestern Company includes an agreement termed a "ground lease" and another which is designated "building lease." The state for $1.00 "leases" land to the company for 35 years, subject to prior termination upon certain conditions. The company agrees to construct upon the land shops and buildings designed by the state for its use in accordance with certain plans and specifications made a part of the contract. These buildings are to be of reinforced concrete and steel construction and to have a reasonable life expectancy of at least 75 years.

The company "leases" the land and buildings to the state for a tentative term of 25 years to commence when the buildings are ready for occupancy. The state agrees to pay a "monthly rental" or fixed charge of $2,500 for 300 months, plus a monthly tentative charge of approximately $825 to cover taxes and insurance premiums. At the expiration of the building lease, the ground lease terminates, and the improvements

to be erected vest absolutely in the state forthwith and without further payment or consideration. Thus upon paying nothing more than 300 "monthly rentals," the state will acquire full title to the buildings. Of significance in this connection is the fact that the state has the right to erect additional buildings, or wings to the buildings constructed by the company, in which the company shall have ". . . no interest whatsoever."

After 15 years, the state may elect to accelerate the payment of the balance of its "rental" obligation, whereupon both "leases" terminate and the realty and improvements vest in the state forthwith and *without further payment*. And although the state should default in its "rentals," upon recovery by the company of its "leasehold value" (defined as ". . . the value at the particular time of the then future payments of rental at $2,500 per month . . ."), the state *without further payment* acquires full title to the premises, including improvements. The amount which the state must pay if it exercises its option under the acceleration clause coincidentally is almost exactly the total of the remaining rental that the company would otherwise receive calculated by amortizing the remaining monthly installments of $2,500 each.

Regardless of whether the state is in default, in any event all right and title to the land and buildings ". . . shall vest absolutely in the State . . ." on January 31, 1985, the date of the expiration of the "ground lease." However, the state is not relieved from liability for any unpaid balance of its obligation to the company. In the event of destruction of the improvements, the state is obligated to pay for the cost of repairs or reconstruction in excess of proceeds of insurance, if any. And the state must pay all taxes and assessments, all premiums on insurance, maintain the premises in good repair, and provide all services and utilities.

Under any construction other than one tortured from the terms "lease" and "rental," the terms of the agreement unmistakably show that it is an installment purchase contract which violates the provisions of article XVI, section 1, of the state Constitution. By the Constitution, the people have prohibited the state from incurring any liability in excess of $300,000 which has not been approved by the electorate. The total "rental" for the building exceeds the forbidden amount, and the company in fact retains title to the "demised" premises for security purposes only. Such a reservation is the

outstanding characteristic of a contract of conditional sale (*County of San Diego* v. *Davis,* 1 Cal.2d 145, 147 [33 P.2d 827] ; see 22 Cal.Jur. 1098).

Other conditions unmistakably bring the contract within this category. The "lessor" under no circumstances whatsoever may receive and retain any amount except the 300 consecutive monthly installments of $2,500, or their amortized equivalent. The company takes no risk whatever. The state must pay the additional cost of construction and all expenses or losses which may result from its default or partial or total destruction of the buildings. Under no circumstances may the company treat its title in the premises as anything other than one for security. Also, the entire consideration from the company, if not delivered at the time the agreement was signed, is to be provided in the 325-day period allowed to erect the buildings and turn over possession of them to the state. The remainder of the 300 consecutive payments are for something previously delivered by the "lessor."

Indicating that the state has all of the ordinary incidents of an owner rather than a lessee is the fact that it must pay every conceivable charge or expense for which an owner would be liable, including all taxes and assessments levied on the premises, the cost of contesting any disputed tax or assessment, insurance premiums on the full insurable value of the improvements, the premium of a title policy in favor of the company, the premium on the company's faithful performance bond, and all service and utility charges. In the ordinary lease, the lessor has the election, upon default of the lessee, to terminate the lease completely. However, the agreement here provides that although the lessor may "terminate" the lease, it must transfer to the state all of the company's right, title and interest in the premises, including improvements, when it receives the amount of the monthly payments and certain expenses.

The real nature and effect of the contract in this case is the same as that of the agreement which was struck down in *Mahoney* v. *San Francisco,* 201 Cal. 248, 264 [257 P. 49]. In holding that transaction void, the court left *McBean* v. *City of Fresno,* 112 Cal. 159 [44 P. 358, 53 Am.St.Rep. 191, 31 L.R.A. 794], the leading case in which a lease agreement was approved, as very limited authority for such a decision. It said: "The McBean case was no doubt written under the urge of the necessities of the situation, and this court has

since been careful not to extend the rule beyond the facts therein stated, and has, as a matter of fact, distinguished that case from subsequent cases, thereby giving effect to the constitutional provisions.''

Later California cases construing ''lease'' contracts of this type have also held that where the purpose of the agreement is to permit the political subdivision (of the state) to acquire ownership of the ''demised'' premises and the ''rentals'' are in effect payments on the purchase price, the formal language of the contract will be disregarded. If in fact the ''lease'' agreement constitutes an installment purchase creating debts or liabilities in excess of the constitutional limit, the contract is invalid (*City of Los Angeles* v. *Offner,* 19 Cal.2d 483 [122 P.2d 14, 145 A.L.R. 1358] ; *Krenwinkle* v. *City of Los Angeles,* 4 Cal.2d 611 [51 P.2d 1098] ; *Mahoney* v. *San Francisco,* 201 Cal. 248 [257 P. 49] ; *In re City and County of San Francisco,* 195 Cal. 426 [233 P. 965]).

The contract considered in *City of Los Angeles* v. *Offner, supra,* differs from the present one in the essential particular that there the parties provided for an option under which the leased property could be purchased by the city for additional consideration apart from the monthly rental. Title to the incinerator, the subject of the contract, did not automatically vest when all rental payments were completed. There remained the requirement that additional consideration be paid by the city prior to its acquisition of title. The court now dismisses this basic difference with the observation that ''. . . as far as liability is concerned, the state under the instrument here is in a better position, for it gets title without the payment of anything other than the rental.'' But that is one of the very reasons why the contract is invalid. Since the 300 monthly payments of ''rental'' are the only amounts which the state must pay under the contract, clearly the transaction is designed as a subterfuge to evade the constitutional limitation, and the payments are nothing more than installments upon the purchase price of the buildings to be constructed.

A provision requiring the payment of a stated consideration upon the exercise of an option to acquire title was also a factor relied upon in construing other public contracts. *Krenwinkle* v. *City of Los Angeles,* 4 Cal.2d 611 [51 P.2d 1098], is such a case. There the agreement included an option to purchase entirely unrelated to the amount of the rental installments. The court observed: ''The purchase does not

decrease with the amount of rent paid, neither can the rentals paid be applied on the option price.'' (*Supra,* at p. 613.)

In *Mahoney* v. *San Francisco,* 201 Cal. 248 [257 P. 49], the decision rested upon the fact that the ultimate purpose was for the city to acquire ownership of the property and that the ''rentals'' were established at an amount which would repay the cost of the property plus interest. The contract sued upon in that case and held void provided for an ''option to purchase,'' but the so-called option was available to the city for no additional consideration. *In re City and County of San Francisco,* 195 Cal. 426 [233 P. 965], concerned a ''lease'' which was held to be in substance a contract of sale. There again the court stressed the fact that the ultimate purpose of the agreement was to permit the city to acquire ownership of the ''demised'' premises and characterized the contract as within the constitutional limitation.

The rule plainly stated and applied in these decisions is that in contracts of this type an option to purchase must be something sold for a consideration other than the so-called ''rentals.'' The contract now before the court does not include or even purport to contain an option to purchase and *a fortiori* it is but a disguised installment sale agreement.

Petitioner heavily relies upon *Vandegrift* v. *Riley,* 84 Cal. Dec. 533 [16 P.2d 734]. That decision is no authority whatsoever, because the court granted a rehearing and thereafter the proceeding was dismissed.

The California cases are in conformity with the weight of authority in other jurisdictions. These decisions hold that a ''lease'' contract which provides for acquisition of property by the state in consideration of the payment of nothing further than the ''rentals'' specified in the contract violates a constitutional debt limit provision (*American-LaFrance & Foamite Corp.* v. *City of Phoenix,* 47 Ariz. 133 [54 P.2d 258]; *Billings* v. *Bankers' Bond Co.,* 199 Ky. 490 [251 S.W. 643]; *Reynolds* v. *City of Waterville,* 92 Me. 292 [42 A. 553]; *Sager* v. *City of Stanberry,* 336 Mo. 213 [78 S.W.2d 431]; *Earles* v. *Wells,* 94 Wis. 285 [68 N.W. 964, 59 Am.St.Rep. 885]; see 71 A.L.R. 1318; 145 A.L.R. 1362).

Indicative of petitioner's realization that the transaction which the state is endeavoring to have validated is in reality an installment purchase contract is the fact that, in effect, the director of finance urges this court to excuse conformity with the Constitution upon the grounds of expediency. For example, he asserts that there is an acute need for facilities

in Los Angeles for the California Highway Patrol, and that the state objects to renting buildings. Rental, it is said, ". . . buys nothing of permanent physical benefit." He states that while the required premises could be provided by tax increases or by bond issue, ". . . practical difficulties of an obvious nature prevent resort to such measures." Statements of this kind merely present objections to the constitutional provision reserving to the people the determination as to the advisability of incurring an obligation such as the one here challenged. But the constitutional limitation should not be swept aside because "practical difficulties" may result from adherence to it.

In addition to these reasons, I would also deny relief in this proceeding upon grounds of public policy. The court here approves an expenditure of approximately one-half million dollars, and upholds an important statute relating to contracts of the kind here challenged, in a suit between two officers of the state. As I pointed out in *City and County of San Francisco* v. *Linares,* 16 Cal.2d 441, 448 [106 P.2d 369], I am strongly opposed to the procedure by which a question of great public interest is conclusively decided in such an action. (See also *City of Grass Valley* v. *Walkinshaw,* 34 Cal.2d 595, 613 [212 P.2d 894] ; *City of Whittier* v. *Dixon,* 24 Cal.2d 664 [151 P.2d 5, 153 A.L.R. 956], and cases cited.) Although the Controller has genuinely contested the validity of the agreement made by the state, litigation in which the taxpayers, the real parties in interest, are unrepresented, should not be encouraged.

Respondent's request for a rehearing made too late was denied June 16, 1950. Shenk, J., Edmonds, J., and Spence, J., voted for a rehearing.