GEORGE J. McCUTCHEON, PLAINTIFF, v. STATE BUILDING AUTHORITY, A BODY CORPORATE AND POLITIC OF THE STATE OF NEW JERSEY; THEODORE D. PARSONS, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY; WILLIAM J. DEARDEN, DIRECTOR OF THE DIVISION OF MOTOR VEHICLES OF THE STATE OF NEW JERSEY; WALTER T. MARGETTS, JR., TREASURER OF THE STATE OF NEW JERSEY; FRED V. FERBER, DIRECTOR OF THE DIVISION OF PURCHASE AND PROPERTY IN THE DEPARTMENT OF THE TREASURY OF THE STATE OF NEW JERSEY, AND PRENTICE REALTY CO. OF TRENTON, A N. J. CORP., DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided March 4, 1953.

Mr. *Walter H. Jones*, for the plaintiff.

Mr. *George Warren*, for the defendant State Building Authority.

Mr. *Frederic G. Weber*, Deputy Attorney-General for the defendants Theodore D. Parsons, Attorney-General, William J. Dearden, Director of the Division of Motor Vehicles, Walter T. Margetts, Jr., Treasurer of the State of New Jersey, and Fred V. Ferber, Director of the Division of Purchase and Property.

SMALLEY, J. S. C.  This is an action brought by a taxpayer of the State of New Jersey seeking to set aside a resolution of the defendant State Building Authority providing for the issuance of certain bonds and to declare invalid certain leases entered into between the defendant Authority with the State of New Jersey, upon the grounds that the act creating the Authority, *L.* 1950, *c.* 255, as amended by *L.* 1952, *c.* 224, *N. J. S. A.* 52:18A–50 *et seq.*, is unconstitutional as violative of *Article VIII, Section II, paragraphs* 2 and 3, and *Article IV, Section* 1, *paragraph* 1, of the *New Jersey Constitution of* 1947.

The second count of the amended complaint challenges the right of the State to enter into certain leases upon the grounds that the aggregate rental of such lease creates a debt or liability of the State in excess of the constitutional debt limit and that the lease obligates the State to make appropriations of state funds over a period of years in violation of paragraphs 2 and 3 of *Article VIII, Section II,* of the Constitution of this State and seeks the following relief:

(A) Enjoining the defendants and each of them from taking any action to carry the purported leases above referred to, into effect or to pay any rentals or other expenses due thereunder, or to issue or sell any bonds the financing or payment of which are dependent upon the validity of such leases.

(B) Declaring that *L.* 1950, *c.* 255, and the supplements thereto and amendments thereof are unconstitutional in that they violate *Article IV, Section I, paragraph* 1, and *Article VIII, Section II, paragraphs* 1, 2, and 3 of the *Constitution of* 1947.

(C) Declaring that the resolution or resolutions of the State Building Authority and the execution of the leases pursuant thereto are unconstitutional and void.

(D) Declaring and determining the validity and constitutionality of the actions of the several parties and the rights or obligations arising thereunder.

There appears to be no factual dispute and the following stipulation of facts, while not appearing to be at all inclusive, is as follows:

"1. That the State Building Authority is a body corporate and politic created pursuant to the provisions of *R. S.* 52:18A–50, *et seq.*

2. That the State Building Authority has issued bonds in the amount of $675,000 and by Resolution adopted on December 18th, 1952 has provided for the issuance of $675,000 State Building Authority Revenue Refunding and Improvement Bonds Project A for the purpose of providing funds to redeem its general corporate bonds previously issued and to pay the cost of erecting the Somerville Barracks for the State Police on the site acquired or to be acquired therefor.

3. That the State Building Authority has entered into a lease with the State of New Jersey for 12 sites to be used for Motor Vehicle stations which lease runs for a period of 20 years at an annual rental of $33,374. or an aggregate rental for the 20 year period of $667,480. exclusive of other charges made in said lease.

4. That the lease referred to in Paragraph 3 obligates the State to pay for the maintenance and repair of the stations so rented and all costs incident to the ownership and operation thereof during the term including taxes, if any, and insurance premiums.

5. That the State Building Authority has entered into leases with the State of New Jersey for property known as "Princeton Barracks" and "Somerville Barracks" which leases obligate the State to pay, in addition to the rental set forth therein, all costs incident to the ownership and operation thereof during the term including taxes, if any, and insurance premiums.

6. That the total aggregate rentals of the leases above referred to when added to the debts and liabilities of the State of New Jersey exceed one per cent of the total amount appropriated by the general appropriation law for the year 1952."

It was orally stipulated for the record that the lease agreement entered into by the Director of the Division of Purchase and Property, acting on behalf of the Division of Motor Vehicles, with Prentice Realty Co. of Trenton, for the rental of certain premises as covered by the lease for a period of ten years is to be considered as part of the facts in this motion.

The State Building Authority is a body corporate and politic created pursuant to the provisions of *N. J. S. A.* 52:18A–50 *et seq.* Among the purposes for which it was created are the acquiring, constructing, maintaining, equipping, repairing, furnishing and operating of motor vehicle

inspection stations at a site or sites specified by the Director of Motor Vehicles and approved by the Attorney-General and State House Commission, and state police barracks at a site or sites as specified by the Superintendent of the State Police and approved by the Attorney-General and State House Commission (*N. J. S. A.* 52:18A–52).

In making leases the Authority is limited to making such leases only with the State or any departments, agencies and instrumentalities of the State. (*N. J. S. A.* 52:18A–60, *subd. b*)

The rents and charges which the Authority is authorized to charge must be at reasonable rates to be determined by the Authority for the purpose of providing for the payment of the expenses of the Authority, the construction, improvement, repair, equipping, furnishing, maintaining and operation of its facilities and properties; the payment of the principal of and interest on its obligations, and to fulfill the terms and provisions of any agreements made with the purchasers or holders of any such obligations (*N. J. S. A.* 52:18A–60).

Any department or agency and any instrumentality of the State is empowered to enter into a contract with the Authority for the use of any space in any project, and any such contract is declared to be binding upon the department, agency or instrumentality of the State, notwithstanding that no appropriation was made or provided to cover the cost or estimated cost of the contract. (*N. J. S. A.* 52:18A–59)

The Authority has issued bonds in the amount of $675,000 and from a portion of the proceeds thereof acquired sites for motor vehicle service stations and sites for barracks of the State Police. By resolution dated December 18, 1952 the Authority provided for the issuance of bonds in the amount of $675,000 to redeem its general corporate bonds previously issued and to pay the cost of erecting the Somerville Barracks for the State Police.

By resolution duly adopted, the Authority authorized the leasing of 12 sites acquired by it to the State of New Jersey acting through the Commissioner of Motor Vehicles for a term of 20 years at a total annual rental of $33,374. Pur-

suant to said resolution, the lease was duly executed and appears as "Schedule A" annexed to the original complaint.

Under the terms of the lease the lessee covenants to pay the annual rentals from current funds available. In addition to the annual rentals the lessee covenants to maintain and operate the stations and to pay all costs incident to maintenance and operation.

The lessee also covenants that in the preparation of its annual budget it will include an amount sufficient 'to cover the amount of its annual rentals as the basis of current appropriation to be made to such Division of Purchase and Property in the Department of the Treasury. In addition, the lessee covenants to pay all taxes and assessments or governmental charges, if any, lawfully levied upon the stations. The lessee is obligated to insure the stations.

The lease specifically grants to the Authority the right to re-enter and take possession of the stations without prejudice to any other rights or privileges which it may have in law or equity in the event of a default in the payment of any installment of rental.

The aggregate rentals of the 12 stations amounts to $667,480, exclusive of the additional costs to be borne by the lessee.

In addition to the lease above described two other leases were entered into, one for property known as "Princeton Barracks" and the other for property known as "Somerville Barracks," both properties to be used by the State Police. These leases appear as Exhibits "B" and "C," respectively, and are similar in provisions to the lease above described except that they are for but one-year terms, with the lessee being given the privilege of renewal from year to year on 90-days' notice being given.

The authority, in its answer to the amended complaint filed in this cause admits the essential facts as set forth in the amended complaint but denies that the act is unconstitutional.

The second count of the complaint challenges the validity of a lease dated September 12, 1952, between Prentice Realty

Co. of Trenton and the State of New Jersey, covering premises in the City of Trenton, which lease runs for a period of ten years from March 1, 1953 at a yearly rental of $38,811.10. The aggregate rental under this lease for the entire term comes to $388,110. This lease contains a covenant on the part of the State to pay the yearly rent. The State also covenants that it will not at any time during the term demise or in any manner dispose of the demised premises, etc. At the expiration of the term the State covenants to surrender the premises.

This lease does contain a provision giving the State the right to cancel the lease after five years upon the happening of certain conditions.

In its answer filed in this cause the defendant Prentice Realty Co. contends that the lease is a valid one and affirmatively states that the lease does not obligate the State to appropriate monies for a period longer than a single fiscal year at any one time.

It is not denied that the aggregate amount of the rentals under the leases above referred to exceed one per cent of the total amount appropriated by the general appropriation law for the year 1952, and that no law authorizing the making of the leases was submitted to the legally qualified voters of the State.

*Article VIII, Section II, paragraph* 3 provides in part as follows:

"The Legislature shall not, in any manner, create in any fiscal year a debt or debts, liability or liabilities of the State, which together with any previous debts or liabilities shall exceed at any time one per centum of the total amount appropriated by the general appropriation law for that fiscal year, unless the same shall be authorized by a law for some single object or work distinctly specified therein. Regardless of any limitation relating to taxation in this Constitution, such law shall provide the ways and means, exclusive of loans, to pay the interest of such debt or liability as it falls due, and also to pay and discharge the principal thereof within thirty-five years from the time it is contracted; and the law shall not be repealed until such debt or liability and the interest thereon are fully paid and discharged. No such law shall take effect until it

shall have been submitted to the people at a general election and approved by a majority of the legally qualified voters of the State voting thereon."

*N. J. S. A.* 52:18A–52 provides as follows:

"The Authority is created for the purpose of acquiring, constructing, maintaining, equipping, furnishing, repairing and operating a State office building in the City of Trenton, an administrative building or buildings for the use of the offices of the State Department of Education on the campus of the New Jersey State Teachers College at Trenton, motor vehicle inspection stations at a site or sites specified by the Director of the. Division of Motor Vehicles and approved by the Attorney-General and the State House Commission, State Police barracks at a site or sites specified by the Superintendent of State Police and approved by the Attorney-General and the State House Commission, and housing for employees of State Institutions operated by the Department of Institutions and Agencies at a site or sites specified by the Commissioner of Institutions and Agencies and approved by the State Board of Control of Institutions and Agencies and the State House Commission. The Authority shall lease or otherwise contract for the use of space in projects or parts thereof, but such leases shall be only to, and such contracts only with, the State or any departments, agencies and instrumentalities of the State."

*N. J. S. A.* 52:18A–66 authorizes the Authority from time to time to issue its negotiable bonds for any of its corporate purposes and provides for the refunding and redemption or payment of bonds to be refunded including interest thereon and the like.

*N. J. S. A.* 52:18A–68 states that said bonds shall not be deemed to constitute a debt or liability of the State and is as follows:

"Bonds under the provisions of this act shall not be deemed to constitute a debt or liability of the State or of any political subdivision thereof or a pledge of the faith and credit of the State or of any such political subdivision. All such bonds shall contain on the face thereof a statement to the effect that neither the State nor any political subdivision thereof is pledged to pay the same or the interest thereon and that neither the faith and credit nor the taxing power of the State, or of any political subdivision thereof is pledged to the payment of the principal of or the interest on such bonds."

It appears to this court that many of the arguments and contentions of the plaintiff have been answered in *New Jersey Turnpike v. Parsons*, 3 *N. J.* 235 (1949), and in *Newark v. New Jersey Turnpike*, 7 *N. J.* 337 (1951), on facts and basis which would seem to govern and plot the Legislature's action in questions of this type. There is, however, a distinction between the Turnpike Act and the Building Authority Act—the source of revenue, toll as opposed to rentals. Such other contentions do not present any problem not heretofore decided by our Supreme Court.

The legislation subject to this review is not merely modern thinking; rather, it is putting into effect a practical, effective method of dealing with acute conditions requiring a viewpoint that never waivers from a strict observance of the constitutional limitations properly imposed, but at the same time permits government to function adequately and effectively.

I surmise that if the delegates to the last Constitutional Convention had been informed that such legislation, as here, was not permitted under the Constitution then being written, that the delegates would have dismissed such a contention as unthinkable.

Summarizing, it would appear that the State Building Authority, pursuant to the power granted it, has or is in the possession of:

1. 12 Inspection Stations at sites specified by the Director of the Division of Motor Vehicles and approved by the Attorney-General and the State House Commission, and has leased these facilities to the Department of Motor Vehicles for a period of 20 years.

2. Built one state police barracks and is presently constructing a second barracks at sites specified by the Superintendent of State Police and approved by the Attorney-General and the State House Commission, both under one-year, renewable leases.

3. Prepared plans and specifications for a 200,000-sq. ft. State Office Building to be erected in Trenton, and is nego-

tiating with the Division of Purchase and Property for its rental.

4. Prepared plans and specifications for an administration building for the use of the offices of the State Department of Education on the campus of the New Jersey State Teachers' College at Trenton and is negotiating for its rental.

For the purpose of retiring the expiring bond issues now outstanding and to complete the projects now under way, the Building Authority has negotiated for the sale of $675,-000 of refunding bonds and has duly passed a resolution authorizing the issuance of such bonds. After the public announcement of these bonds, plaintiff instituted this suit. Until the final disposition hereof, the refunding bond issue cannot be successfully marketed.

Final disposition in such matters means a disposition by the Supreme Court of this State. An assignment to the County of Mercer carries with it the task of deciding a considerable number of such suits testing the constitutionality of various acts of the Legislature. Counsel are always hoping that the trial court will not take too long in filing its determination because such decision merely provides the way and admission to the tribunal of final disposition.

It is conceded that the rental to be paid for the occupying of the various quarters by the State authorized under the act must come out of appropriated funds. The real dispute is whether or not the leases here require continuing appropriations of funds extending over a period of years. If the answer to this question is in the affirmative, then the act is in violation of the *New Jersey Constitution of 1947, Art. VIII, Sec. II, par.* 2. If the rule is that the obligation which is subject to future appropriations is a debt only to the extent of each appropriation, and each annual installment is a new obligation, then there is no violation of the constitutional provision.

There are two schools of thought on this subject. In *Dean v. Kuchel,* 35 *Cal.* 2d 444, 218 *P.* 2d 521 (*Sup. Ct.* 1950), involving a 35-year lease with title to vest at the end of the lease in the State, it was held to be a genuine lease for

annual rentals and not a contract for aggregate rentals. See *Greenhalgh v. Woolworth*, 361 *Pa.* 543, 64 *A. 2d* 659 (*Sup. Ct.* 1949).

In *Brewster v. Deschutes County*, 137 *Ore.* 100, 1 *P. 2d* 607 (*Sup. Ct.* 1931), the contrary view was adopted. Generally speaking, however, the majority of the states with similar constitutional provisions as ours follow the rule in *Dean v. Kuchel, supra. Bacon v. City of Detroit*, 282 *Mich.* 150, 275 *N. W.* 800 (*Sup. Ct.* 1937); *Gemmill v. Calder*, 332 *Pa.* 281, 3 *A. 2d* 7 (*Sup. Ct.* 1938); *City of Los Angeles v. Offner*, 19 *Cal. 2d* 413, 122 *P. 2d* 14 (*Sup. Ct.* 1942); and *Prueher v. City of Bloomer*, 241 *Wis.* 17, 4 *N. W. 2d* 186 (*Sup. Ct.* 1942). No attempt will be made here, however, to set forth all of the cited cases by the respective parties.

Confronted with the fact that the sister states have split and differed on such questions and there appears to be precedent to be followed for either view, it is obvious that this trial court must of necessity adopt one of these two viewpoints.

I find that I must and do subscribe generally to the view expressed in *Kelley v. Earle*, 325 *Pa.* 337, 190 *A.* 140, 141, 144 (*Sup. Ct.* 1937):

"In considering the question of constitutionality, due regard must be had to the Commonwealth's position, the projects to be undertaken, the character of the contract, and the parties with whom it is made. To enforce a harsh, literal, interpretation of the Constitution when considering the legality of the leases of the projects herein mentioned, which are essential to the life of the State and the comfort, health, or security of its people, a construction opposed to all business concepts, would violate all rules of interpretation and cause loss of the respect necessary to the life of that document. While it is the duty of the courts to uphold the Constitution, it is likewise their duty not to declare an act unconstitutional unless it is imperatively necessary to do so. We must reach the solution, not through a forced, strained, or unnatural construction, but one in keeping with the end to be obtained in the light of necessary government expenses and with the constitutional interdiction before us."

See *N. J. Turnpike Authority v. Parsons*, 5 *N. J. Super.* 595, 604 (*Law Div.* 1949).

■ Finding as I do that there is no violation of Article VIII, Section II, paragraph 2 of the Constitution, in that the obligation of rent is a debt only to the extent of each appropriation and that each annual installment is a new obligation, it cannot successfully be claimed that the issuance of the bonds or the terms of the leases created debts or liabilities of the State in excess of the constitutional debt limit.

■ The bonds of the Authority do not pledge the faith or lend the credit of the State. The act in clear language specifically bars the faith and credit of the State, (*N. J. S. A.* 52:18A–68), and where such is the fact no interpretation holding otherwise is countenanced. *N. J. Turnpike Authority v. Parsons*, 3 *N. J.* 235 (1951).

■ That the act is a valid exercise of legislative discretion seems apparent. Generally speaking, the main distinction between the Turnpike Act and the State Authority Act is, as said before, the source of revenue—tolls in place of rentals. Having determined such rentals do not contravene the provisions of the Constitution of 1947, that conclusion is practically dispositive of this motion. There is precedent which permits and approves the Legislature's action, as here, in making the Authority an independent entity permitting it to function in accordance with the provisions of the act. *Newark v. N. J. Turnpike Authority, supra; N. J. Turnpike Authority v. Parsons, supra.*

■ The power to acquire inspection stations, the building of police barracks, the planning and perhaps building for rental, offices and administration buildings, and such other facilities as are clearly set forth in the act, are such administrative details as require delegation and are a valid exercise of the Legislature's discretion.

There being no factual dispute for determination, I accordingly find that the plaintiff as a matter of law is not entitled to the relief sought under the complaint.

The defendants' motion for summary judgment against the plaintiff is granted. A form of judgment may be submitted.