TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

|                                          |   |                    |
|------------------------------------------|---|--------------------|
| OPINION                                  | : |                    |
|                                          | : | No. 95-305         |
| of                                       | : |                    |
|                                          | : | July 27, 1995      |
| DANIEL E. LUNGREN                         | : |                    |
| Attorney General                         | : |                    |
|                                          | : |                    |
| GREGORY GONOT                            | : |                    |
| Deputy Attorney General                  | : |                    |
|                                          | : |                    |

_____


THE HONORABLE DOMINIC CORTESE, MEMBER OF THE CALIFORNIA STATE ASSEMBLY, has requested an opinion on the following question:

In order to acquire land for a county-wide recreational trail system, may a county agree to indemnify private landowners from liability for injuries sustained by persons using the trails adjoining or traversing the landowners' properties?

CONCLUSION

In order to acquire land for a county-wide recreational trail system, a county may agree to indemnify private landowners from liability for injuries sustained by persons using the trails adjoining or traversing the landowners' properties.

ANALYSIS

The question presented concerns a county-wide recreational trails master plan which a county seeks to implement as part of its general plan (Gov. Code, § 65300-65403).[1]  The aim of the

_____

[1]A county is required to adopt a general plan for its physical development that includes a designation of "the proposed general distribution and general location and extent of the uses of the land for housing, business, industry, open space, including agriculture, natural resources, recreation, and enjoyment of scenic beauty . . . ."  (Gov. Code, § 65302, subd. (a).) A general plan may also contain "[a] recreation element showing a comprehensive system of areas and public sites for

master plan is to provide a network of recreational trails that connects cities to one another and connects the cities to the county's regional open space areas. In order to implement the program, the county must acquire property from private landowners for the trail system. Such acquisitions would be in the form of easements or outright purchases of property. It is expected that the landowners will not agree to convey property or grant easements for the trails unless the county agrees to indemnify them from liability for injuries sustained by users of the trails.[2] The indemnity[3] would apply to liability for all injuries except those caused by a landowner's willful or malicious conduct. We are asked to determine whether a county may legally provide such indemnification when acquiring the property or rights thereto.

Preliminarily we note that the Legislature has granted immunity from liability to private property owners in specific circumstances. Government Code section 831.4 provides:

"A public entity, public employee, or a grantor of a public easement to a public entity for any of the following purposes, is not liable for an injury caused by a condition of:

"(a) Any unpaved road which provides access to fishing, hunting, camping, hiking, riding, including animal and all types of vehicular riding, water sports, recreational or scenic areas and which is not a (1) city street or highway or (2) county, state or federal highway or (3) public street or highway of a joint highway district, boulevard district, bridge and highway district or similar district formed for the improvement or building of public streets or highways.

"(b) Any trail used for the above purposes.

"(c) Any paved trail, walkway, path, or sidewalk on an easement of way which has been granted to a public entity, which easement provides access to any unimproved property, so long a such public entity shall reasonably attempt to provide adequate warnings of the existence of any condition of the paved trail, walkway, path, or sidewalk which constitutes a hazard or safety. Warnings required by this subdivision shall only be required where pathways are paved, and such requirement shall not be construed to be a standard of care for any unpaved pathways or roads."

Under Government Code section 831.4, a public entity enjoys absolute immunity from liability for injuries caused by a physical defect of a trail used for hiking, riding, or access to recreational or scenic areas. (*State of California* v. *Superior Court* (1995) 32 Cal.App.4th 325, 328; *Armenio* v. *County of*

---

recreation . . . ." (Gov. Code, § 65303, subd. (a).)

[2]Users of the trails would include those who, in connection with their use of the trails, are injured while trespassing on adjoining private property.

[3]"Indemnity is a contract by which one engages to save another from a legal consequence of the conduct of one of the parties, or of some other person." (Civ. Code, § 2772.)

*San Mateo* (1994) 28 Cal.App.4th 413, 416-417; *Grannuzzi* v. *State of California* (1993) 17 Cal.App.4th 462, 466.)  This immunity is also extended under the terms of the statute to a private property owner who grants a public easement to a public entity for trail purposes.

An even broader grant of immunity is contained in Civil Code section 846,[4] which provides:

> "An owner of any estate or any other interest in real property, whether possessory or nonpossessory, owes no duty of care to keep the premises safe for entry or use by others for any recreational purpose or to give any warning of hazardous conditions, uses of, structures, or activities on such premises to persons entering for such purpose, except as provided in this section.

> "A `recreational purpose,' as used in this section, includes such activities as fishing, hunting, camping, water sports, hiking, spelunking, sport parachuting, riding, including animal riding, snowmobiling, and all other types of vehicular riding, rock collecting, sightseeing, picnicking, nature study, nature contacting, recreational gardening, gleaning, hang gliding, winter sports, and viewing or enjoying historical, archaeological, scenic, natural, or scientific sites.

> "An owner of any estate or any other interest in real property, whether possessory or nonpossessory, who gives permission to another for entry or use for the above purpose upon the premises does not thereby (a) extend any assurance that the premises are safe for such purpose, or (b) constitute the person to whom permission has been granted the legal status of an invitee or licensee to whom a duty of care is owed, or (c) assume responsibility for or incur liability for any injury to person or property caused by any act of such person to whom permission has been granted except as provided in this section.

> "This section does not limit the liability which otherwise exists (a) for willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity; or (b) for injury suffered in any case where permission to enter for the above purpose was granted for a consideration other than the consideration, if any, paid to said landowner by the state, or where consideration has been received from others for the same purpose; or (c) to any persons who are expressly invited rather than merely permitted to come upon the premises by the landowner.

> "Nothing in this section creates a duty of care or ground of liability for injury to person or property."

Section 846 eliminates the property owner's duty of care to keep the premises safe for entry or use by others for any recreational purpose.  It also eliminates any duty of the owner to warn recreational users

---

[4]All references hereafter to the Civil Code are by section number only.

of "hazardous conditions, uses of, structures or activities on such premises." The purpose of the section 846 is to "`constrain the growing tendency of private landowners to bar public access to their land for recreational uses out of fear of incurring tort liability.'" (*Johnson* v. *Unocal Corp.* (1993) 21 Cal.App.4th 310, 315.)

A "recreational purpose," as that term is used in section 846, is defined to include a wide variety of recreational pursuits, such as hiking, fishing, cave exploring, hang gliding, picnicking, and sightseeing. This statutory immunity has also been held to apply to various activities which are not expressly specified in the statute, such as tree climbing (*Valladares* v. *Stone* (1990) 218 Cal.App.3d 362) and playing on abandoned farm equipment (*Ornelas* v. *Randolph* (1993) 4 Cal.4th 1095). However, section 846 specifically removes immunity when the owner invites the trespasser onto the property, receives consideration for permission to enter onto the property,[5] or willfully or maliciously fails to guard against the condition that causes the injury.

Under the California Recreational Trails Act (Pub. Resources Code, §§ 5070-5077.8), counties and other public agencies are encouraged to develop a system of recreational trails in their areas. (Pub. Resources Code, §§ 5074, 5074.1.) Public Resources Code section 5070.5 states:

"The Legislature hereby declares that it is the policy of the state to:

"(a) Increase accessibility and enhance the use, enjoyment, and understanding of California's scenic, natural, historic, and cultural resources.

"(b) Encourage hiking, horseback riding, and bicycling as important contributions to the health and welfare of the state's population.

"(c) Provide for the use of recreational trails by physically disabled persons, the elderly, and others in need of graduated trails with special safety features, particularly in conjunction with heritage corridors.

"(d) Increase opportunities for recreational boating on designated waterways.

"(e) Increase opportunities for use of recreational vehicles in designated areas and trail corridors pursuant to Chapter 1.25 (commencing with Section 5090.01.)

"(f) Provide for the development and maintenance of a statewide system of recreational and interpretive trails, including heritage corridors.

---

[5]Execution of a hold harmless agreement which requires a user to indemnify the owner from claims that might arise from its use of the property has been held insufficient to constitute consideration that would remove the immunity granted by section 846. (*Johnson* v. *Unocal Corp., supra*, 21 Cal.App.4th 310.) "A landowner must gain some immediate and reasonably direct advantage, usually in the form of an entrance fee, before the exception to immunity for consideration comes into play." (*Id.*, at p. 317.)

"(g) Increase the recreational and educational use of public roads by developing guides, maps, and other interpretive materials concerning significant historical, agricultural, scenic, and other resource areas.

"(h) Encourage the development by cities, counties, district, and private groups of recreational and interpretive trails, including heritage corridors."

State funds are available to counties and other public agencies to acquire and develop recreational trails. (Pub. Resources Code, § 5072.8.) Contracts may be executed by the state with private landowners under this program (Pub. Resources Code, § 5074.7), as well as with other governmental agencies (Pub. Resources Code, § 5074.5). Significantly Public Resources Code section 5075.4 provides:

"No adjoining property owner is liable for any actions of any type resulting from, or caused by, trail users trespassing on adjoining property, and no adjoining property owner is liable for any actions of any type started on, or taking place within, the boundaries of the trail arising out of the activities of other parties."

The Legislature has also expressly authorized indemnity agreements between private landowners and state or local governments. For example, if an owner of agricultural land subject to a Williamson Act contract for property tax purposes (Gov. Code, §§ 51200-51295) agrees to permit use of the land for public recreation, a city or county may agree to indemnity the owner under the terms of Government Code section 51238.5:

"If an owner of land agrees to permit the use of his land for free public recreation, the board or council may agree to indemnify such owner against all claims arising from such public use. The owner's agreement that his land be used for free, public recreation shall not be construed as an implied dedication to such use."

Another example involves an easement or right-of-way obtained by the state pursuant to the terms of Government Code section 14662.5:

"In any agreement entered into whereby the state obtains a grant of easement, lease, license, right-of-way, or right of entry (including without limitation, a right-of-way, or right of entry on or over property of any railroad), the state agency or its director entering into the agreement on behalf of the state may agree to indemnify and hold harmless the grantor, lessor, or licensor and may agree to repair or pay for any damage proximately caused by reason of the uses authorized by such easement, lease, license, right-of-way, or right or entry agreement."

With these various statutory immunities and indemnity agreement authorizations for private landowners in mind, we turn to the indemnity proposal being considered as part of a county's efforts to obtain a county-wide recreational trail system. We find that the proposal does not involve landowners extending invitations to trail users to come onto their properties or their giving permission to do so in return for some type of payment. And, as previously noted, the proposed agreements would

not cover injuries to trail users caused by the willful or malicious conduct of the private property owners. Consequently, as a practical matter, indemnification would be largely limited to a landowner's liability for injuries sustained by persons using the trails for a business or other non-recreational purpose. Such a purpose was found, for example, in *Potts* v. *Halsted Financial Corp.* (1983) 142 Cal.App.3d 727 [trespasser seeking to determine the type of construction used in beach homes] and *Gerkin* v. *Santa Clara Valley Water Dist.* (1979) 95 Cal.App.3d 1022 [trespasser using bridge as access to a nearby supermarket].

The primary issue raised by the indemnity proposal is whether it would violate the Constitution as either a proscribed "gift" or the "lending of credit" by the county to the landowners. Article XVI, section 6 of the Constitution provides:

> "The Legislature shall have no power to give or to lend, or to authorize the giving or lending, of the credit of the State, or of any county, city and county, city, township or other political corporation or subdivision of the State now existing, or that may be hereafter established, in aid of or to any person, association, or corporation, whether municipal or otherwise, or to pledge the credit thereof, in any manner whatever, for the payment of the liabilities of any individual, association, municipal or other corporation whatever; nor shall it have power to make any gift or authorize the making of any gift, of any public money or thing of value to any individual, municipal or other corporation whatever . . . ."[6]

A similar prohibition applies to counties under Government Code section 23007:

> "Except as specified in this chapter, a county shall not, in any manner, give or loan its credit to or in aid of any person or corporation. An indebtedness or liability incurred contrary to this chapter is void."

Would the inclusion of the indemnity clause in the county's contracts with the landowners constitute a gift or the lending of credit within the meaning of article XVI, section 6 of the Constitution and Government Code section 23007?

We answered such a question in 59 Ops.Cal.Atty.Gen. 665, *supra*, where we examined the authority of a county to execute an indemnification agreement with the state. We stated:

> "To constitute a gift within the meaning of the constitutional prohibition here in question, there must be a gratuitous transfer of property, made voluntarily and without consideration. *Yosemite Stage, etc. Co.* v. *Dunn*, 83 Cal. 264 (1890). Indemnity clauses are common-place in the business world, and it is a reasonable and practical

---

[6]Although article XVI, section 6 is a limitation on the power of the Legislature, it results in a limitation on the counties, whose powers are derived from the Legislature. (59 Ops.Cal.Atty.Gen. 665 (1976); see also 60 Ops.Cal.Atty.Gen. 59 (1977).) Of course, mere statutory authorization, such as contained in Government Code section 51238.5, would be insufficient to insulate the gift or loan from the constitutional prohibition.

conclusion that the cost of indemnity is reflected in the negotiated contract price. As was said in *People* v. *City of Long Beach*, 51 Cal.2d 875, 881 (1959): `It is clear, however, that the performance of a bona fide contract by a public body is not the making of a gift, . . .'" (*Id.*, at p. 667.)

In 9 Ops.Cal.Atty.Gen. 87, 90 (1947), we stated:

". . . it is quite clear under the authorities that `hold harmless' agreements are not within the provisions of Section 31, Article IV [now section 6, article XVI], where such agreements are merely a part of a plan carrying out a public purpose."

A leading case concerning the constitutional prohibition against the making of gifts or the lending of credit is *County of Alameda* v. *Carleson* (1971) 5 Cal.3d 730. In *Carleson* the court explained the meaning of the constitutional proscription:

"It is generally held that in determining whether an appropriation of public funds is to be considered a gift, the primary question is whether the funds are to be used for a `public' or `private' purpose; the benefit to the state from an expenditure for a public purpose is in the nature of consideration and the funds expended are therefore not a gift even though private persons are benefited therefrom. [Citations.] The determination of what constitutes a public purpose is primarily a matter for the Legislature, and its discretion will not be disturbed by the courts so long as that determination has a reasonable basis. [Citations.] . . . "

*Carleson* has been followed by numerous court decisions and opinions of this office. (See, e.g., *California Housing Finance Agency* v. *Elliot* (1976) 17 Cal.3d 575, 583 ["Under the public purpose doctrine, public credit may be extended and public funds disbursed if a direct and substantial public purpose is served and nonstate entities are benefited only as an incident to the public purpose"]; *Winkelman* v. *City of Tiburon* (1973) 32 Cal.App.3d 834, 845-846; 77 Ops.Cal.Atty.Gen 170, 173 (1994).)

Here the county's master plan for a recreational trail system serves a public purpose by promoting "the laudable goal of inducing owners to make their properties available for recreation." (*Ornelas* v. *Randolph, supra*, 4 Cal.4th at 1107.) Inserting an indemnity clause into the contracts with the landowners would serve a public purpose; it thus would not constitute a "gift" for purposes of the Constitution. If the county purchases an insurance policy to cover losses under the indemnity agreements or is self-insured to a stated maximum amount, no unconstitutional pledging of credit would be involved. (See *Miller* v. *Johnson* (1935) 4 Cal.2d 265, 267-268; 60 Ops.Cal.Atty.Gen., *supra*, 61.) Even if the lending of credit were involved, it would be valid since it would be for a public purpose. (See *Veterans' Welfare Board* v. *Jordan* (1922) 189 Cal. 124, 141; 60 Ops.Cal.Atty.Gen., *supra*, 61.)

Finally we note that a city or county may not incur an indebtedness or liability exceeding the income or revenue for that particular year without prior voter approval. Section 18 of article XVI of the Constitution provides:

"No county, city, town, township, board of education, or school district, shall incur any indebtedness or liability in any manner or for any purpose exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the qualified electors thereof, voting at an election to be held for that purpose, . . . nor unless before or at the time of incurring such indebtedness provision shall be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also provision to constitute a sinking fund for the payment of the principal thereof, on or before maturity, which shall not exceed forty years from the time of contracting the same; . . ."[7]

However, the voter requirement is inapplicable where the debt is contingent upon the happening of some event. "A sum payable upon a contingency is not a debt, nor does it become a debt until the contingency happens." (*Doland* v. *Clark* (1904) 143 Cal. 176, 181; accord, *American Co.* v. *City of Lakeport* (1934) 220 Cal. 548, 557; see *Bickerdike* v. *State* (1904) 145 Cal. 682, 695-697; *McBean* v. *City of Fresno* (1896) 112 Cal. 159, 168; 58 Ops.Cal.Atty.Gen. 691, 695 (1975).) Here the indemnity agreements would subject the county only to "[a] sum payable upon a contingency."

We therefore conclude that in order to acquire land for a county-wide recreational trail system, a county may agree to indemnify private landowners for injuries sustained by persons using the trails adjoining or traversing the landowners' properties.

\* \* \* \* \*

---

[7]The Constitution places a voter approval requirement upon the creation of debt at the state level as well (Cal. Const., art. XVI, § 1) and the two limitations have been construed together due to their common language and purpose. (See *Dean* v. *Kuchel* (1980) 35 Cal.2d 444, 446; *In re California Toll Bridge Authority* (1931) 212 Cal. 298, 307-308.)